UNITED STATES of America,
Plaintiff–Appellee,

v.

Charles ZIMMER, Defendant–Appellant.

No. 93–1144.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 14, 1993.

Decided Jan. 12, 1994.

Jennifer J. Peregord (argued and briefed), Office of the U.S. Atty., Detroit, MI and Janet L. Parker, Asst. U.S. Atty., Office of the U.S. Atty., Bay City, MI, for plaintiff-appellee.

William A. Brisbois (argued and briefed), Brisbois & Brisbois, Saginaw, MI, for defendant-appellant.

Before: MERRITT, Chief Judge; JONES, Circuit Judge; and CELEBREZZE, Senior Circuit Judge.

MERRITT, Chief Judge.

The defendant, Charles Zimmer, appeals the District Court's denial of a motion to suppress and the sentence imposed after his plea of guilty to manufacturing marijuana. Richard Durfee of the Ogemaw County Sheriff's Department obtained a search warrant for the defendant's home after an informant allegedly told the police that Zimmer was growing marijuana on the premises. A heat imager determined that excessive heat was coming from the residence, and a power company check further revealed that the home used substantially more electricity than other neighborhood homes. The search of the house revealed that defendant maintained a sophisticated marijuana manufacturing operation in the basement where police confiscated 802 marijuana plants. Three rifles were also seized from the living area of Zimmer's home. After the defendant admitted growing marijuana in the past, the District Court added 200 plants/kilos as relevant conduct to the 800 plants/kilos which were actually confiscated. Although Zimmer cooperated, the District Court did not adjust his base offense level for acceptance of responsibility because he tested positive for marijuana use prior to sentencing. The court, however, enhanced the defendant's offense level for possession of the rifles found in the house during the search. The defendant's base offense level, including the weapons and relative conduct enhancements, was 34, with a criminal history category IV. The guideline range was 210 to 268 months, and the court sentenced Zimmer to 216 months. Without these two enhancements totalling 4 levels, the defendant's base offense level would have been 30, with a guideline range of 135 to 168 months.

Zimmer pleaded guilty to the offense but now challenges the information used in support of the search warrant and three of the District Court's rulings at sentencing. Specifically, the defendant asserts that the District Court erred by (1) not suppressing the evidence from the search even though Officer Durfee allegedly disregarded the truth by lying in his affidavit; (2) refusing to adjust downward for acceptance of responsibility because defendant's urine tested positive for

marijuana; (3) enhancing defendant's sentence for relevant conduct when the court had no factual support for its finding that the defendant previously grew 200 marijuana plants; and (4) enhancing for possession of three hunting rifles which the defendant claims were not connected to the marijuana growing operation. We conclude that the first two assignments of error should be denied but on the last two Zimmer is correct.

## I. MOTION TO SUPPRESS

The defendant claims that the District Court erred by denying a motion to suppress because the officer/affiant (Officer Durfee) included in his affidavit the statements of an informant, William Volmer, that were known to be either untrue or unreliable. According to Officer Durfee, Volmer stated in an interview that he had been to the defendant's residence and seen marijuana growing there. Prior to trial, Volmer said that he had never made any such statements to Durfee and that the officer had therefore fabricated those allegations in the affidavit. The District Court conducted a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to determine whether Officer Durfee had deliberately lied or recklessly disregarded the truth by including Volmer's statements in his affidavit.

Volmer testified on behalf of the defendant, stating in effect that he never made any statements to Officer Durfee. The District Court evaluated and rejected Volmer's testimony, finding that it was "less than the kind of reliable testimony the Court would have to find in order to determine that the defendant's point had been established by a preponderance of the evidence." (Mot. Hrg.Tr. at 156–60). The testimony indicated that Volmer's live in girlfriend was related to defendant Zimmer and that Volmer and Zimmer were also friends. Volmer was thus familiar with defendant Zimmer's house. More importantly, a second officer (Chapman) testified that he was present when Volmer made the statements in question to Offi-

cer Durfee. Chapman and Durfee's accounts of the interview with Volmer were consistent and accepted by the court. The description and address of the house given by Volmer were verified, the tip was deemed reliable, and the statements were included in Durfee's affidavit.[1]

Volmer also testified that he was having "problems" with Officer Durfee and that Durfee was "setting him up" due to a separate case and his refusal to be an informant for the police. In addition, Volmer had allegedly been untruthful to Officer Durfee on an unrelated matter in the past. The defendant claims that Durfee should have known that Volmer was not reliable, and that he was therefore "reckless" to swear to any of the statements purportedly given by Volmer.

The defendant has the burden of showing deliberate falsehood or reckless disregard for the truth by a preponderance of the evidence. *Franks v. Delaware*, 438 U.S. at 156, 98 S.Ct. at 2676. The District Court found that the defendant did not meet this burden, and that finding is subject to the clearly erroneous standard. Here, the issue is both whether certain statements were ever made, and whether Volmer was so unreliable that Officer Durfee acted recklessly by including his statements in the affidavit. The District Court judged the credibility of the officers and the informant and found that the officers' accounts were more reliable. This Court agrees. The defendant has not met his burden under the first prong of the *Franks* test.

By finding that Officer Durfee did not act in disregard for the truth, the District Court never reached the second part of the *Franks* test which is whether the affidavit in question established probable cause even without Volmer's statements. Although not strictly necessary for a decision on this issue, we note that the thermal imager, the electric bills, the unrelated officer's visit, etc. were enough to establish probable cause. Volmer's three statements comprised only three paragraphs out of twenty substantive paragraphs in the affidavit supporting the search

1. In addition, a third officer had been to the defendant's house on an unrelated call and reported that the house smelled of marijuana.

That information was also included in the affidavit.

warrant. Thus, even if Volmer's statements were unreliable, the motion to suppress evidence was still properly denied because probable cause was nonetheless established by the other information in the affidavit.

## II. ACCEPTANCE OF RESPONSIBILITY

■ The defendant cooperated by pleading guilty and informing the government of his entire scheme. While on bond he attended counseling for his purported marijuana addiction. The defendant argued that these factors entitled him to an adjustment for acceptance of responsibility. Due to a lack of funding, his rehabilitation program was discontinued. Thereafter, Zimmer tested positive for marijuana on three separate occasions prior to sentencing. Based on this continuing drug use, the District Court denied the motion to adjust for acceptance of responsibility. Zimmer claims that the District Court clearly erred by finding that his positive urine tests were sufficient cause to deny a motion for acceptance of responsibility.

The District Court's refusal to adjust for acceptance of responsibility is subject to clearly erroneous review. *United States v. Downs,* 955 F.2d 397, 400 (6th Cir.1992); *United States v. Osborne,* 948 F.2d 210 (6th Cir.1991). On this kind of issue, the District Court has broad discretion. Quite simply, Judge Cleland found that Zimmer's use of marijuana was both a crime and a violation of the conditions of his bond, indicating that he had not accepted responsibility for his crimes. The Sixth Circuit has held that a reduction for acceptance of responsibility is not warranted where the defendant engages in ongoing criminal activity after a guilty plea. *Downs,* 955 F.2d at 400; *United States v. Reed,* 951 F.2d 97 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1700, 118 L.Ed.2d 409 (1992) ("... continued criminal conduct is incompatible with the idea of acceptance of responsibility."). The commentary to the Sentencing Guidelines acknowledges that accepting responsibility "may be

outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility. A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." U.S.S.G. § 3E1.1, comment. (n. 3).

Here, the defendant committed a crime "related" to his underlying guilty plea and violated his bond conditions. The fact that the defendant's rehabilitation program was discontinued may be a mitigating factor, but it is not of such magnitude as to make the District Court's ruling clearly erroneous.

## III. RELEVANT CONDUCT ENHANCEMENT

■ At the time of defendant's arrest, the police confiscated 802 marijuana plants, 300 grams of loose marijuana, and 40 grams of seeds. Zimmer also admitted to having grown marijuana for the last seven or eight years. Based on this evidence of past conduct, the District Court made a finding that the defendant had produced an absolute minimum of 200 plants over the last eight years. The court then added this 200 plant determination to the 800 seized plants as relevant conduct. The District Court stated, in part:

> There is no way on this green earth that a person who is capable of this kind of sophistication could have failed to produce at least two hundred plants over the course of eight years of trying in the past. It's only 20—what is it—25 plants in the course of a year.

(Sent.Tr. at 37). Pursuant to this finding, the District Court increased Zimmer's base offense level from 30 to 32.[2] The issue faced here is whether there was sufficient factual support for the District Court's finding that the defendant had grown 200 plants over the past eight years. The factual findings of the District Court are subject to the clearly erroneous standard of review. *United States v. Walton,* 908 F.2d 1289, 1301 (6th Cir.1990); *United States v. Barrett,* 890 F.2d 855, 867 (6th Cir.1989).

**2.** The court applied the guidelines' "equivalency provision" which states that in cases involving 50 or more plants, each plant is deemed to weigh one kilogram. Thus, it added 200 kilograms (for 200 plants) to the 800 kilos (800 plants) that were actually confiscated. U.S.S.G. § 2D1.1, comment. (backg'd).

U.S.S.G. § 1B1.3(a)(2) provides that the base offense level "shall be determined on the basis of ... all acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction." Proof of relevant conduct must be "supported by some minimal indicium of reliability beyond mere allegation." *United States v. Smith,* 887 F.2d 104, 108 (6th Cir.1989) (citation omitted). The government must prove the quantity of drugs by a preponderance of the evidence. *United States v. Sims,* 975 F.2d 1225, 1242 (6th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1315, 122 L.Ed.2d 702 (1993). If the amount cannot be easily determined, it is the duty of the District Court to estimate the amount. *Walton,* 908 F.2d at 1300–02. The *Walton* test is whether the defendant is "more likely than not *actually* responsible for a quantity greater than or equal to the quantity for which [he] is being held responsible." *Id.* at 1302 (emphasis in original). Moreover, the court's estimate must be supported by a preponderance of the evidence. *Id.* The District Court is not free to estimate the "highest" number possible; it must be cautious so as not to violate the due process rights of the defendant. *Id.* (citations omitted).

The court's determination that the defendant grew an additional 200 plants is not supported anywhere in the record. The District Court may not "create" a quantity when there is absolutely no evidence to support that amount. An estimate can suffice, but "a preponderance of the evidence must support the estimate." *Walton,* 908 F.2d at 1302. The government argues that the 25 plants per year number is low considering the 800 plants that were actually seized. This argument ignores the unrefuted evidence that the defendant had only recently started his indoor operation. The information and equipment seized in the case clearly demonstrates

that the "sophisticated" indoor growing operation was but a few months old. Thus, the size of defendant's operation at the time of arrest cannot be manipulated to infer a certain amount of past "success" (25 plants per year) when there exists not a scintilla of evidence to support such a finding. That the defendant grew marijuana during the years prior to his arrest is not in question; he admitted as much. The amount attributed to him by the District Court, however, was created from whole cloth. It is improper and a violation of *Walton* to simply "guess." The relevant conduct enhancement is therefore reversed and the District Court is directed to resentence defendant based on the actual amount of marijuana seized.[3]

## IV.  POSSESSION OF FIREARMS

The District Court enhanced the defendant's offense level two points under § 2D1.1(b) due to the three hunting rifles which were on the premises at the time of the search. Zimmer argues that this was clearly erroneous. The question before us is whether the defendant met his burden by clearly showing that the hunting rifles found at his residence were not connected to his marijuana operation.

Possession of a weapon is established if it "could have facilitated [the] illegal transactions," *United States v. McGhee,* 882 F.2d 1095, 1099 (6th Cir.1989), and "the adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, comment. (n. 3). It is the defendant's burden to show that the gun was not connected with the offense. *McGhee,* 882 F.2d at 1097. Here, the defendant has met that burden. He has shown by unrefuted testimony that these rifles were for hunting and were unconnected with the marijuana. We therefore hold that it was clearly errone-

---

**3.** At oral argument, we inquired about the propriety of applying the so called "equivalency provision" of U.S.S.G. § 2D1.1 (if 50 or more plants, 1 plant = 1 kilogram) to relevant conduct. Because there are no plants confiscated in relevant conduct scenarios, there is a question as to whether the formula should apply at all. This issue is exacerbated in the instant case because the court aggregated eight years of marijuana

growing (25 plants per year) to get over the 50 plant threshold. We do not resolve these questions because it is not necessary for a decision and because it is not squarely presented in this appeal. This declination should not be read as an approval of this practice by the district court. Compare *United States v. Blume,* 967 F.2d 45 (2nd Cir.1992), with *United States v. Haynes,* 969 F.2d 569 (7th Cir.1992).

ous for the District Court to enhance the base offense level under this provision.

The rifles were found in the main part of the house while the plants were grown in a "secret room" in the basement. No weapons were found in the basement where the marijuana plants were located. Two rifles (one operable but unloaded, one disassembled and inoperable) were in the living room while one rifle was found loaded in the bathroom. Zimmer stated that only the rifle in the bathroom belonged to him and that he used it to hunt, which was clearly supported by the fact that Zimmer had killed a deer from the bathroom window on the day before the search (he was fined for illegal possession of the deer).

The District Court failed to consider that the defendant was charged with a marijuana *manufacturing* operation. There are no allegations that Zimmer was actively selling the substance from his home. We do not have a situation in which "drug dealing" was occurring on the premises, during which a weapon might be utilized. None of the weapons were found anywhere near the marijuana. That one of the rifles in the living room was disassembled and inoperable supports the defendant's claim that he was repairing it for a friend. Likewise, the absence of *any* ammunition in the house for the unloaded second rifle further supports the defendant's assertion that the rifle did not belong to him.

As for the loaded rifle, Zimmer's claim that he used it for hunting purposes was factually corroborated. Zimmer argued that he hunted from the window of his bathroom which faced the back of his yard. At least one deer found on the premises had been shot from the window the day before. This testimony was unrebutted by the government. Moreover, the bathroom was in the main part of the house and not near the basement where the marijuana was located.

The government relies on *McGhee*, in which the defendant was enhanced under § 2D1.1(b). The *McGhee* court recognized that a weapon on the premises does not alone permit an enhancement: "The enhancement for weapon possession ... would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet." *McGhee*, 882 F.2d at 1095 (quoting the guidelines). That is basically the situation we have here. The defendant has demonstrated with unrefuted evidence that the loaded weapon was a hunting rifle. Given the nature of the operation (manufacturing, not dealing), the setting (rural), and the location of the contraband (in basement) away from the weapons, "it is clearly improbable that the weapon(s) [were] connected with the offense." U.S.S.G. § 2D1.1, comment. (n. 3). Accordingly, the District Court erred by enhancing the defendant's offense level under this provision. This portion of the District Court's order is reversed and remanded for resentencing.

We therefore **AFFIRM** the order of the District Court which denied the defendant's motion to suppress. The denial of the motion for downward adjustment for acceptance of responsibility is likewise **AFFIRMED**. For the reasons stated above, the relevant conduct and weapons enhancements are hereby **REVERSED** and this cause is **REMANDED** for resentencing consistent with this opinion.