**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Sean MEACHAM (93–1692) and Ramone Botello (93–1768), Defendants– Appellants.**

Nos. 93–1692, 93–1768.

United States Court of Appeals, Sixth Circuit.

Argued March 22, 1994.

Decided June 15, 1994.

Patricia G. Blake (briefed), Jonathan Tukel (argued), Office of the U.S. Atty., Detroit, MI, Janet L. Parker, Asst. U.S. Atty., Office of the U.S. Atty., Bay City, MI, for U.S.

Thomas J. Plachta (argued & briefed), Brady & Plachta, Bay City, MI, for Ramone Botello.

Ramone Botello, pro se.

George C. Bush (briefed), Saginaw, MI, for Sean Meacham.

Before: KEITH, MARTIN, and DAUGHTREY, Circuit Judges.

BOYCE F. MARTIN, JR., Circuit Judge.

Sean Meacham and Ramone Botello pled guilty to charges of conspiring to distribute controlled substances. Both defendants now challenge the sentences imposed by the district court, contending that the court included in its relevant conduct calculation an excessive quantity of narcotics. Botello also maintains that the district court erred in failing to reduce his offense level for acceptance of responsibility and improperly ordered him to pay restitution to the government. For the following reasons, we remand both cases for resentencing.

## I

On October 14, 1992, a federal grand jury returned a nineteen-count indictment against Ramone Botello, his girlfriend, Shannon Jones, and Jones' son, Sean Meacham. The indictment charged the defendants with various offenses relating to their distribution of cocaine and marijuana to undercover officers and government informants in Saginaw, Michigan, over a ten-month period beginning in October 1991. Count One charged the defendants with conspiring to possess cocaine and marijuana with the intent to distribute, in violation of 21 U.S.C. § 846, Count Three charged Botello with using a person under eighteen years of age to distribute cocaine, in violation of 21 U.S.C. § 861(a)(1), and the

remaining counts charged distribution of cocaine and marijuana, in violation of 21 U.S.C. § 841(a)(1).

Pursuant to agreements with the government, each defendant entered a plea of guilty to the conspiracy count. The remaining counts were dismissed on the government's motion. On May 13, 1993, the district court sentenced Meacham to a seven-and-a-half-year term of imprisonment. On May 26, the district court sentenced Botello to a thirteen-year term of imprisonment, fined him $1,000, and ordered him to pay restitution to the government in the amount of $10,470. This timely appeal, challenging only the sentences imposed by the district court, followed.

## II

Initially, Meacham and Botello contend that the district court erred in holding them both accountable for more than one hundred kilograms of marijuana. The presentence investigation report attributed more than eighty, but less than one hundred, kilograms of marijuana to the defendants for sentencing purposes.[1] Rejecting this calculation, the district court sentenced both Meacham and Botello on the basis of one hundred kilograms of marijuana, which resulted in a two-level increase in their base offense levels.

■ This Court reviews the factual findings of a district court regarding the amount of narcotics for which a defendant is to be held accountable for clear error. *United States v. Ferguson*, 23 F.3d 135, 141–42 (6th Cir.1994). In calculating a defendant's base offense level under the Sentencing Guidelines, the sentencing court must consider those quantities of drugs not specified in the counts of conviction that are "part of the same course of conduct or common scheme or plan." U.S.S.G. § 1B1.3(a)(2); *United States v. Zimmer*, 14 F.3d 286, 290 (6th Cir.1994). Where the amount is uncertain, the court is urged "to 'err on the side of caution' and only hold the defendant responsible for that quantity of drugs for which 'the defendant is more likely than not *actually*

responsible.'" *United States v. Baro*, 15 F.3d 563, 568–69 (6th Cir.1994) (quoting *United States v. Walton*, 908 F.2d 1289, 1302 (6th Cir.), *cert. denied*, 498 U.S. 990, 111 S.Ct. 532, 112 L.Ed.2d 542 (1990)); *see also Zimmer*, 14 F.3d at 290 (sentencing court "is not free to estimate the 'highest' number possible" or to create an amount "from whole cloth"). The sentencing court's relevant conduct approximation must be based on reliable information and supported by a preponderance of the evidence. U.S.S.G. § 6A1.3(a) (authorizing a court "to consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy"); *Zimmer*, 14 F.3d at 290 (noting that "the court's estimate must be supported by a preponderance of the evidence").

■ Here, the district court relied on evidence from a single source to support its relevant conduct finding: the testimony of Detective Dennis McMahan at Jones' sentencing hearing. As an undercover officer with the Bay Area Narcotics Team, McMahan participated in the investigation of Jones, Meacham, and Botello. For more than ten months, McMahan posed as a customer in order to ingratiate himself with the defendants. In this role, he purchased sizeable amounts of cocaine and marijuana from the defendants, regularly spoke with them regarding the acquisition of drugs, and once traveled with Botello to Detroit to buy cocaine. McMahan also kept the defendants' residence under surveillance on a periodic basis. From nearby vantage points, McMahan and other officers observed an intermittent stream of suspected drug customers flow into the apartment. Although the officers never apprehended any of these individuals, McMahan theorized that forty percent of the customers purchased cocaine in one-eighth to one-quarter of an ounce quantities, while sixty percent bought marijuana in similar quantities.

---

1. The total quantity was calculated using the Sentencing Guidelines "Drug Equivalency Tables," which correlate one gram of cocaine with two hundred grams of marijuana. U.S.S.G. § 2D1.1, comment. (n.10).

Based upon this testimony, the district court determined that, in addition to the quantity detailed in the presentence investigation report, the defendants had distributed at least three-and-a-half ounces of cocaine between November 1991 and April 1992. According to the court:

> A very conservative estimate of ten customers a week means about 200 customers during that 20 weeks. Roughly half of those customers, a little bit less, would be perhaps between 80 and 100. If we took the low side of that, 80 customers, each one of them buying the smallest amount of cocaine that the officer observed, that being an 8–ball at 3 and a half grams each, would be far beyond the statutory amount. That would be up in the neighborhood of 250 to 300 grams of cocaine being sold to those observed individuals during that five months stretch of time.

Given these deductions, the district court increased each defendant's base offense level from twenty-four to twenty-six.

While troubled by the somewhat speculative nature of the court's quantity calculation, we are most disturbed by the fact that the district court failed to make individualized findings regarding the scope of the conspiracy and the duration and nature of each defendant's participation in the scheme. The court held a single hearing at which a lone government witness testified, then indiscriminately imported its factual findings concerning the amount of narcotics for which Jones was responsible into the Meacham and Botello sentencing calculus. Apparently, the district court simply assumed that Meacham and Botello were to be held accountable for all narcotics channeled through the conspiracy. In doing so, the court erred.

Even under the Sentencing Guidelines, particularized sentencing is mandated, and "differentiation between coconspirators is required." *United States v. Jenkins*, 4 F.3d 1338, 1347 (6th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1547, 128 L.Ed.2d 197 (1994). As this Court has recognized, "because 'the scope of conduct for which a defendant can be held accountable under the sentencing guidelines is significantly narrower than the conduct embraced by the law of conspiracy,' a sentencing judge may not, without further findings, simply sentence a defendant according to the amount of narcotics involved in the conspiracy." *United States v. Okayfor*, 996 F.2d 116, 120–21 (6th Cir.) (quoting *United States v. Lanni*, 970 F.2d 1092, 1093 (2d Cir.1992)), *cert. denied*, —— U.S. ——, 114 S.Ct. 238, 126 L.Ed.2d 192 (1993); *see also Ferguson*, 23 F.3d at 141–43. Because the record in this matter leaves us unconvinced that the district court conducted a sufficiently individualized inquiry into the government's evidence, we must remand both cases for resentencing.

### III

Botello also asserts that the district court erred by failing to reduce his offense level for acceptance of responsibility. Section 3E1.1 of the Sentencing Guidelines provides, "If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." In determining whether a defendant qualifies for the reduction, the sentencing court is advised to consider the truthful admission of offense conduct and the truthful admission of any relevant conduct. U.S.S.G. § 3E1.1, comment. (n.1). As the sentencing court's acceptance of responsibility determination is "entitled to great deference on review," U.S.S.G. § 3E1.1, comment. (n.5), we review only for clear error. *United States v. Crousore*, 1 F.3d 382, 386 (6th Cir.1993).

In this case, the district court concluded that Botello did not merit a reduction because he refused, on the advice of counsel, to discuss his role in the offense with the probation officer. While the Sentencing Guidelines provide that "[a] defendant may remain silent in respect to relevant conduct *beyond the offense of conviction* without affecting his ability to obtain a reduction under this subsection," U.S.S.G. § 3E1.1, comment. (n.1(a)) (emphasis added), a defendant may not refuse to provide any information regarding the charge to which he pled guilty. *See United States v. Trujillo*, 906 F.2d 1456, 1460–61 (10th Cir.) (defendant properly denied acceptance of responsibility reduction where he refused "to provide information on the count to which he had admitted his

guilt"), *cert. denied*, 498 U.S. 962, 111 S.Ct. 396, 112 L.Ed.2d 405 (1990). Despite Botello's assertions to the contrary, the mere fact that he timely entered a plea of guilty does not necessarily warrant an acceptance-of responsibility adjustment. From the beginning of Guidelines sentencing, this Court has recognized that a "guilty plea does not entitle a defendant to a sentence reduction as a matter of right." *United States v. Christoph*, 904 F.2d 1036, 1040 (6th Cir.1990), *cert. denied*, 498 U.S. 1041, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991). Because Botello was unable to show that he owned up to his criminal behavior or otherwise accepted responsibility for the offense to which he pled guilty, he failed to carry his burden of proof. We thus conclude that the district court's finding on this issue was not clearly erroneous.

## IV

We turn now to Botello's final challenge to his sentence. Before this Court, Botello vigorously argues that the district court erred by ordering him to reimburse the Bay Area Narcotics Team for the money undercover officers used to purchase drugs from the conspiracy. According to Botello, a district court's order of restitution under the Victim and Witness Protection Act of 1982, 18 U.S.C. §§ 3663, 3664, may not include the government's costs of investigation, even if the parties expressly agreed to such a payment in a plea agreement. We agree.

Whether the Act authorizes an award of restitution to the government is an issue of statutory interpretation reviewed *de novo*. *United States v. Guardino*, 972 F.2d 682, 686 (6th Cir.1992) (with regard to restitution awards, "[w]e review *de novo* whether the order is permitted under law," while reviewing "the amount ordered under the abuse of discretion standard"); *see also United States v. Brown*, 915 F.2d 219, 223 (6th Cir.1990) ("A district court engages in statutory construction as a matter of law, and we review its conclusions *de novo*.").

▇▇▇▇ Under the Act, a defendant may be required to make restitution to the victim of his crime. Section 3663 provides, in pertinent part:

The court, when sentencing a defendant convicted of an offense under this title or under subsection (h), (j), or (n) of section 902 of the Federal Aviation Act of 1958 (49 U.S.C. 1472), may order, in addition to ... any other penalty authorized by law, that the defendant make restitution to any victim of such offense.

18 U.S.C. § 3663(a)(1). The Act aims to protect victims, not to safeguard the government's financial interest in funds used as bait to apprehend offenders. *See United States v. Salcedo–Lopez*, 907 F.2d 97, 99 (9th Cir. 1990); *see also* S.Rep. No. 97–532, 97th Cong., 2d Sess. at 30, *reprinted in* 1982 U.S.C.C.A.N. 2515, 2536 (restitution ensures "that the wrongdoer is required to the degree possible to restore the victim to his or her prior state of well-being"). Accordingly, this Court has recognized that "restitution may not be awarded under the VWPA for investigation or prosecution costs incurred in the offense of conviction." *Ratliff v. United States*, 999 F.2d 1023, 1026 (6th Cir.1993). As the Court recently observed:

investigative costs are not losses, but voluntary expenditures by the government for procurement of evidence. It is settled in this circuit that where, as here, a restitution award is based solely on the costs of the government's investigation and prosecution of the defendant, it is not a direct loss resulting from the defendant's illegal conduct for which restitution may be awarded pursuant to the VWPA.

*Gall v. United States*, 21 F.3d 107, 111–12 (6th Cir.1994) (citing *Ratliff*, 999 F.2d at 1027). In light of these well established principles, the *Gall* court concluded that the government is not entitled to recoup drug "buy money" from a defendant. *Id.*

▇▇▇▇ The fact that a defendant may have entered into an agreement to pay the costs of investigation to the government does not alter this conclusion. While the Act provides that a "court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement," 18 U.S.C. § 3663(a)(3), this Court has held that the repayment of the cost of investigation is not "restitution" within the meaning of the Act.

*See Gall,* 21 F.3d at 112 (noting that "investigative costs are not losses" for which restitution may be awarded); *Ratliff,* 999 F.2d at 1026–27 (finding that the district court erred in awarding restitution for the costs of investigating and prosecuting the defendant because such an expenditure is "not a direct loss for which restitution may be awarded under the VWPA"). We therefore conclude that the Act does not authorize a district court to order restitution for the government's costs of purchasing contraband while investigating a crime, even if the defendant explicitly agreed to such an order in a plea agreement. Because the district court in this case exceeded its statutory sentencing authority by ordering Botello to make good the government's buy money, we must remand for resentencing.

 Finally, we note that even if statutorily permissible, the district court's restitution order in this case would not withstand appellate review. The Act explicitly commands a sentencing court to consider "the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate" in determining whether to order restitution. 18 U.S.C. § 3664(a). Despite this clear mandate, the record reveals that the district court utterly failed to consider the requisite factors in sentencing Botello. In doing so, the district court abused its discretion.

## V

For the foregoing reasons, we remand both cases for proceedings consistent with this opinion.