UNITED STATES of America, Plaintiff–Appellee,

v.

Victor L. MILLEDGE, Defendant–Appellant.

Nos. 95–3722, 95–3865.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 18, 1996.

Decided March 26, 1997.

Victor L. Milledge, Minersville, PA, pro se in No. 95–3722..

Kevin Schad (argued and briefed), Cincinnati, for Victor L. Milledge in No. 95–3722.

Linda M. Betzer, Asst. U.S. Attorney (argued and briefed), Cleveland, OH, for United States in Nos. 95–3722, 95–3865.

Debra M. Hughes (argued and briefed), Federal Public Defender's Office, Cleveland, OH, for Victor L. Milledge in No. 95–3865.

Before: MERRITT, JONES, and COLE, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Defendant–Appellant Victor Milledge ("Milledge") appeals his sentence for conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846, and appeals his conviction for "using" a firearm in connection with a drug-trafficking crime in violation of 18 U.S.C. § 924(c). We find that Milledge's arguments have merit, and thus, reverse his firearm conviction, vacate his drug sentence, and remand this case for resentencing in accordance with this opinion.

## I.

In early 1989, law enforcement agencies in Youngstown, Ohio, began an investigation into a major cocaine distribution ring. Law enforcement agents discovered that a group of cocaine dealers was importing cocaine into Youngstown primarily from New York City. The Youngstown leaders of the conspiracy were Kevin Young and Anthony Haynes. Young and Haynes would place drug orders in New York City and then several couriers, referred to as "mules," would transport the cocaine to Youngstown via passenger bus. The mules would deliver the cocaine to the house of Larry and Linna Turner for stor-

age. Several of Young's employees would retrieve the cocaine from the Turners' home and divide it into one ounce packages for distribution to street dealers. Milledge was one of the street dealers.

Over the period of a year, the agents gained enough information to have probable cause to wiretap Young's telephones. Thus, they installed wiretaps on both his car and home phones on December 12, 1989. The agents also wiretapped Haynes' telephone in January 1990. Between December 12, 1989, and January 18, 1990, agents monitored Young's phones for approximately 16 hours per day, and intercepted about 200 drug related conversations.

The government's evidence against Milledge was not nearly as substantial. Of the 200 calls monitored only three were between Young and Milledge, and only one other phone call concerned Milledge. Additionally, Young testified that Milledge did not enter the conspiracy until "near the end."

On January 18, 1990, law enforcement officers searched Milledge's residence. Milledge was present during the search. In the basement, the officers seized about 1.8 kilograms of cocaine, two scales, a safe, Milledge's receipts for gun purchases, and United States currency. The officers also found a "street sweeper" shotgun in a first floor bedroom, a .32 caliber pistol on the couch in the basement, and a .357 caliber revolver on the basement floor. Milledge was not holding, brandishing, or shooting these weapons when the police discovered them.

On April 3, 1990, a federal grand jury indicted Milledge and 22 other individuals in a 43–count Superseding Indictment. The indictment charged Milledge with conspiracy to possess cocaine with intent to distribute, using a telephone to facilitate the conspiracy, possession with intent to distribute cocaine, and using a firearm in relation to a drug-trafficking offense.

By November 19, 1990, all of the defendants, except for Milledge and one other defendant, had entered guilty pleas to various charges. These two opted for trial. After one witness testified, however, Milledge pleaded guilty to all six counts with which he was charged.

On February 21, 1990, the district court sentenced Milledge and four other defendants. At the sentencing hearing, the district court heard testimony regarding the amount of cocaine for which each defendant should be held accountable. The court found that Milledge was responsible for between 50 and 150 kilograms of cocaine, and thus, sentenced him to 151 months for the conspiracy, plus 60 months for the firearm charge. Milledge's sentence also included five years of supervised release and $300.00 in special assessments.

The district court never advised Milledge of his right to appeal. Consequently, on August 10, 1994, Milledge filed a habeas petition pursuant to 28 U.S.C. § 2255 claiming the district court failed to advise Milledge of his appellate rights. He also claimed that no factual basis was established for the firearm count and that he received ineffective assistance of counsel. The district court granted the habeas motion in part because it failed to advise Milledge of his right to appeal. The court then vacated his sentence and reset the sentencing date. The district court denied his ineffective assistance of counsel claim, and dismissed without prejudice his "nonconstitutional" firearms claim because it now could be raised on direct appeal.

Milledge was resentenced on June 8, 1995, and received the same sentence as before. Milledge then filed this timely appeal.[1] Milledge also appealed the district court's denial of a portion of his habeas petition. The two appeals were consolidated and are now before this court.

## II.

### A.

Milledge first appeals his conviction under 18 U.S.C. § 924(c) for "using" a firearm dur-

---

1. Originally, Milledge designated his appeal as a sentencing appeal. After filing his notice of appeal, Milledge moved to supplement the appeal with a challenge to his § 924(c) firearms conviction. On February 5, 1996, this court recognized

that while the appeal had been pending the Supreme Court issued its decision in *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), and thus granted the motion for leave to supplement the notice of appeal.

ing a drug-trafficking offense. While this appeal was pending, the Supreme Court decided *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). In *Bailey*, the Supreme Court held that a conviction for violating § 924(c) requires "evidence sufficient to show an active employment of the firearm by the defendant." —— U.S. at ——, 116 S.Ct. at 505 (emphasis in original). "The active-employment understanding of 'use' certainly includes brandishing, displaying, bartering, striking with, and most obviously firing or attempting to fire, a firearm." Id. at ——, 116 S.Ct. at 508. The government concedes that "Milledge's conduct does not fall within the 'use or carry' element of § 924(c) as interpreted by the Supreme Court in *Bailey* and its progeny." Government's Br. at 10. Accordingly, we hereby reverse Milledge's conviction under 18 U.S.C. § 924(c).

■ Anticipating the reversal, the government requested remand of this case for re-sentencing, so the district court can consider whether to sentence Milledge to a two-level upward adjustment of his offense level under United States Sentencing Guidelines ("USSG") § 2D1.1(b)(1). At the time of sentencing § 2D1.1(b)(1) provided that "if a dangerous weapon (including a firearm) was possessed during the commission of an offense, increase by 2 levels." USSG § 2D1.1(b)(1) (1991).

■ Milledge argues that the government failed to cross-appeal the sentences imposed, and therefore, is precluded from receiving the relief sought—sentencing enhancement. This court has already decided this precise issue. In *United States v. Clements*, 86 F.3d 599 (6th Cir.1996), this court vacated the defendant's conviction as a result of the *Bailey* decision. Without filing a cross-appeal, the government requested remand so the district judge could consider whether to enhance the defendant's sentence. We held that such a remand was permissible. *Clements*, 86 F.3d at 600; accord *United States v. Lang*, 81 F.3d 955, 963 (10th Cir.1996); *United States v. Fennell*, 77 F.3d 510, 510–11 (D.C.Cir.1996) (per curiam); *United States v. Roulette*, 75 F.3d 418, 426 (8th Cir.), cert. denied, —— U.S. ——, 117 S.Ct. 147, 136

L.Ed.2d 93 (1996). This court has jurisdiction to vacate an entire sentencing package, even when certain portions of the sentence have not been challenged. *Clements*, 86 F.3d at 600–01, 28 U.S.C. § 2106. "This power allows an appellate court, in a case on a direct appeal from multiple count criminal convictions where the several sentences are interdependent, to vacate all sentences even if only one is reversed on appeal." *Clements*, 86 F.3d at 601 (emphasis added) (citations omitted).

In this case, as in *Clements*, the sentences were interdependent. If Milledge had not been convicted under § 924(c), the district court would have had the discretion to enhance Milledge's sentence for firearm possession under USSG § 2D1.1(b)(1). Id.; USSG § 2K2.4 note 2 (1996). The district court did not have this discretion, however, because Milledge was convicted under § 924(c). Consequently, on remand the district court should determine whether to enhance Milledge's sentence under USSG § 2D1.1(b)(1).

### B.

Milledge currently has two appeals before this court: a habeas appeal pursuant to 28 U.S.C. § 2255 and a direct appeal. At oral argument, Milledge argued that we should consider his habeas appeal rather than his direct appeal, because he claims that if we remand pursuant to § 2255 the district judge will not have the authority to resentence him.

This case presents an interesting, albeit unusual, procedural history. On April 3, 1990, a federal grand jury returned a 43-count indictment against Victor Milledge and 22 other individuals. Only two of these individuals, including Milledge, chose to go to trial on November 19, 1990. On November 20, 1990, Milledge opted out of the trial and pleaded guilty to all six charges against him. On February 21, 1991, the district judge sentenced Milledge, but failed to advise Milledge of his right to appeal. Consequently, Milledge did not file a timely appeal.

While in prison, Milledge composed a pro se habeas petition pursuant to 28 U.S.C. § 2255. On August 10, 1994, Milledge filed his petition claiming: (1) ineffective assis-

tance of counsel, (2) lack of factual basis for the firearms charge under 18 U.S.C. § 924(c), and (3) failure to advise him of his appellate rights. On June 8, 1995, the district court granted Milledge's motion to vacate his sentence because it had previously failed to advise Milledge of his right to appeal. *Milledge v. United States*, No. 94–1633, slip op. at 1–2 (N.D. Ohio June 8, 1995). The district court denied the claim of ineffective assistance of counsel and left the 924(c) claim for Milledge's direct appeal. Id. at 2.[2]

Nonconstitutional claims must be raised on direct appeal, before a court can consider such a claim on collateral review. *Stone v. Powell*, 428 U.S. 465, 477 n. 10, 96 S.Ct. 3037, 3044 n. 10, 49 L.Ed.2d 1067 (1976). Courts will only consider a nonconstitutional claim for the first time on collateral review "if the alleged error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)).

■ Milledge's claim that he should not have been convicted of "using" a firearm under § 924(c) is a nonconstitutional claim. In a unique situation like this, where the petitioner/appellant has both a direct appeal and habeas petition before the court, the more prudent course is to address the direct appeal. See *Sunal v. Large*, 332 U.S. 174, 178, 67 S.Ct. 1588, 1590, 91 L.Ed. 1982 (1947) ("So far as convictions obtained in the federal courts are concerned, the general rule is that the writ of habeas corpus will not be allowed to do service for an appeal."). Accordingly, we need not reach the issue of whether a district court can resentence a defendant on a collateral attack.

### III.

#### A.

■ Finally, Milledge contends that the district court improperly sentenced him for a drug amount between 50 and 150 kilograms

of cocaine. We review a district court's determination of the amount of drugs for clear error. *United States v. Ferguson*, 23 F.3d 135, 142 (6th Cir.1994).

In calculating a defendant's base offense level under the Sentencing Guidelines, the sentencing court must consider those quantities of drugs that are "part of the same course of conduct or common scheme or plan." USSG § 1B1.3(a)(2); *United States v. Zimmer*, 14 F.3d 286, 290 (6th Cir.1994). "Where the amount is uncertain, the court is urged 'to err on the side of caution and only hold the defendant responsible for that quantity of drugs for which the defendant is more likely than not actually responsible.'" *United States v. Meacham*, 27 F.3d 214, 216 (6th Cir.1994) (emphasis in original) (quoting *United States v. Baro*, 15 F.3d 563, 568–69 (6th Cir.1994) (other citations omitted)); see also *Zimmer*, 14 F.3d at 290 (The sentencing court "is not free to estimate the 'highest' number possible" or to create an amount "from whole cloth."). The sentencing court must base its relevant conduct approximation on reliable information, and the conduct approximation must be supported by a preponderance of evidence. *Meacham*, 27 F.3d at 216; *Zimmer*, 14 F.3d at 290. While the sentencing court need not consider the rules of evidence when making this determination, the evidence must have "sufficient indicia of reliability to support its probable accuracy." USSG § 6A1.3(a). Furthermore, particularized sentencing and "differentiation between coconspirators is required" under the sentencing guidelines. *United States v. Jenkins*, 4 F.3d 1338, 1347 (6th Cir.1993), cert. denied, 511 U.S. 1034, 114 S.Ct. 1547, 128 L.Ed.2d 197 (1994).

We have repeatedly discussed the situation in which a district court does not make the requisite findings in sentencing. For example, in *Meacham*, this court was troubled with the district court's speculative nature of quantifying the amount of drugs, and was even more "disturbed by the fact that the district court failed to make individualized findings regarding the scope of the conspira-

---

**2.** Milledge's ineffective assistance of counsel concerns his conviction under 18 U.S.C. § 924(c). Thus, his ineffective assistance of counsel claim is now moot because we have reversed his conviction under § 924(c).

cy and the duration and nature of each defendant's participation in the scheme." 27 F.3d at 217. In that case, the district court held one hearing, where only one government witness testified. Id. The district court improperly imported its factual findings concerning one defendant to the other members of the conspiracy. Id. The district court's actions constituted reversible error. Id.

In *Zimmer*, the government confiscated the defendant's 800 marijuana plants. Id. at 289. The defendant also admitted to having grown marijuana for the past seven or eight years. Id. Thus, the district court added 200 plants to the quantity at sentencing, stating that "there is no way that a person who is capable of this kind of sophistication could have failed to produce at least two hundred plants over the course of eight years of trying in the past." Id. (quoting transcript). This court found that the district court's addition of 200 plants was unsupported in the record. Id. at 290. The unrefuted evidence that the defendant had only recently started his indoor operation and that the indoor growing equipment was only a few months old was contrary to the district court's findings. This court, therefore, reversed the district court's addition of the 200 plants because evidence cannot be manipulated to infer an increase in the quantities drugs "where there exists not a scintilla of evidence to support such a finding." Id.

### B.

In the case at bar, the district court resentenced Milledge to the same sentence he received on February 21, 1991. During the February 21, 1991, sentencing hearing, the district court found "based upon the testimony that he's heard today and concerning the plea as I've taken it, that the amount of 50 to 150 is reasonable." Sentencing Hearing at 145 (February 21, 1991). Evidence of particularized findings or the district court's reasoning is scant. The district court definitely did not err on the side of caution in this case.

The government claims that the district court considered several portions of the Superseding Indictment and the testimony of Special Agent S.A. Litchfield in reaching its conclusion. A detailed review of the Superseding Indictment and Agent Litchfield's testimony does not lead us to conclude that the district court could have found by a preponderance of the evidence that Milledge dealt with more than 50 kilograms of cocaine. Instead, after reviewing al l of the evidence presented to the district court, we find that Milledge possessed no more than 13 kilograms.

The facts from the indictment and Agent Litchfield's testimony are as follows:

On December 16, 1989, Milledge told Young he was "ready" and would meet Young around 11:00 p.m. Superseding Indictment, Overt Acts, ¶ 38 (September 4, 1990). Young then called the Turners' house and told the Turners that Milledge would come over "for another one of them things," at around 11:00 p.m., and would leave the money with Turner. Id. ¶ 39. Young also testified that Milledge did not become involved in the drug trade until near the end of 1989. Thus, without more, it is possible that when Young stated Milledge was "ready," he may have been referring to the fact that Milledge was ready to begin dealing. Larry Turner testified that Milledge had come by to get cocaine twice when he was there, and that each time he would get one kilogram of cocaine. Sentencing Hearing at 43 (February 21, 1991) (Testimony of Larry Turner). Turner further testified that Milledge came by four or five times when his wife was at home. Id. at 42–43. All of this testimony does not appear conclusive, but on the high end a court could approximate that Milledge picked up approximately seven kilograms from the Turner house.

On December 18, 1989, Young and Haynes talked about a shipment of cocaine coming into town. Superseding Indictment, Overt Acts, at ¶ 45. Additionally, on December 18, 1989, Young talked to Milledge, and Milledge agreed to meet at the usual place around 10:00 p.m. Id. ¶ 47. Young then called Turner and told him to meet with Milledge. Id. ¶ 48. There is no evidence as to what he picked up, if anything, at this meeting, and Turner never testified about this meeting. The government points out that Young and

Haynes imported 14 kilograms of cocaine into Youngstown that day. The government, however, presented no evidence that Milledge received any of this cocaine. In fact, the evidence is to the contrary. The Superseding Indictment states that Young and Haynes decided to put this cocaine "away and wait until their other supply shrinks." Id. ¶ 45. Consequently, no evidence exists that any of these 14 kilograms went to Milledge.

On January 6, 1990, Young promised to deliver three kilograms of cocaine to Milledge, which Young was going to obtain from Miami. Id. ¶ 97. Litchfield's testimony corresponded with the fact that Milledge received three kilograms; Litchfield testified that after Young agreed to supply Milledge with three kilograms, Milledge stated to Young that he would stick with Young. Sentencing Hearing at 27 (February 21, 1991) (Testimony of John Litchfield).

Additionally, on January 17, 1991, Young received 6 kilograms from his Miami supplier and 17 kilograms from his New York supplier. Officers recovered approximately 15.6 of these 23 kilograms. The government believes that Milledge had possession of two to three of the remaining seven plus kilograms. Government Br. at 15.

Finally, when the police searched Milledge's house they recovered 1.8 kilograms of cocaine. The government has not presented any evidence that this cocaine was not already accounted for in the other tabulations.

■ Milledge presents unrefuted testimony that he began dealing in late 1989. The government arrested the members of the conspiracy in January 1990. At the sentencing hearing, the Assistant United States Attorney said that Milledge "probably gets fairly close to 50 kilograms in stuff that he laid his hands on or laid eyes on." Sentencing Hearing at 134-35 (February 21, 1991). Such a vague statement is not sufficient, without more, to enhance a person's criminal sentence. First, this shows that even the Assistant United States Attorney was unsure. Second, the government did not support this statement. When this court totals all of the government's evidence listed above, we find that Milledge dealt with approximately 13 kilograms of cocaine. This number falls far short of the requisite 50 kilograms needed for the two-level sentencing enhancement. Thus, it appears the sentencing court created its number from "whole cloth." See *Zimmer*, 14 F.3d at 290.

The result we direct in this case is not done lightly. We remain mindful of the manner in which illegal drugs continue to plague our society. Yet, the law forbids a court from imposing sentences piecemeal or by mere guess-work, and no court should sentence a person to a harsher sentence than the law dictates. Consequently, we have no choice but to vacate Milledge's sentence and remand the case for the district court to perform a more thorough and pointed inquiry as to the amount of drugs involved in this case.

## IV.

Accordingly, this court hereby **REVERSES** Milledge's conviction for "using" a firearm in violation of § 924(c). Additionally, we **VACATE** Milledge's entire sentence and remand for the district judge to reconsider the evidence in accordance with this opinion.