**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William Anderson BURKE,**
**Defendant–Appellant.**

No. 98–1800.

United States Court of Appeals,
Sixth Circuit.

April 9, 2001.

Before KRUPANSKY, BATCHELDER, and GILMAN, Circuit Judges.

KRUPANSKY, Circuit Judge.

This case presents the defendant's appeal from a jury verdict of guilty as to the single count of the indictment that the defendant conspired with others to possess and distribute more than one-hundred and fifty kilograms of cocaine. Defendant argues that his trial counsel was ineffective, that the verdict was not supported by the evidence, and that he should have been sentenced to far less time in prison than he was because he was not personally responsible for much of the drug possession for which he was charged.

Defendant William Anderson Burke was indicted on November 6, 1996 for conspiring with others to possess and distribute cocaine in violation of 18 U.S.C. §§ 841 and 846. On April 22, 1997, a superseding indictment was filed. The substance of the charges remained the same. Burke, Brian Chase, Ward Wesley Wright, and Raymond Kelsey agreed to bring large quantities of cocaine into the country (specifically, Detroit) from Colombia. At first, the group worked with a source that Chase and Kelsey met in prison. Later, the conspiracy evolved into stealing airplanes, transporting them to Columbia, and exchanging them for drugs and cash.

Chase and Kelsey knew Burke as he was the national president of the Avengers, a biker organization, some of the members of which had previously helped distribute shipments of cocaine. After integrating Burke into their drug distribution system, Chase and Kelsey recruited him to help steal airplanes. On a number of occasions, Burke either helped steal an airplane (three times) or attempted to do so (at least three other times). In the course of the drug trafficking conspiracy, Burke distributed five to ten kilograms of a one-hundred kilogram shipment, five to ten kilograms of a sixty-four kilogram shipment, the entirety of a ninety-eight kilogram shipment, eleven kilograms of a fifty kilogram shipment, and the entirety of a one kilogram shipment.

In early winter of 1996, Kelsey was arrested in the Carribean for carrying a

false passport. He offered to cooperate with the authorities and assist with the investigation. He made tape-recorded phone calls to Burke and Chase, proposing to do another one-hundred kilogram deal. He was to leave the cocaine in the trunk of a parked car at a Red Roof Inn in Detroit. Burke and Chase would then arrive and drive the car away. On October 25, 1996, Burke and Chase were arrested in the motel parking lot as they arrived to take possession of the car. On December 16 through 22, 1997, Burke was tried before a jury. On December 23, 1997, the jury returned a verdict of guilty.

On June 24, 1998, Burke was sentenced to 188 months of imprisonment and five years of supervised release. On April 13, 1999, this court held the appeal in abeyance pending a decision by the district court on a motion by the government to supplement the record. On September 23, 1999, the trial court granted the motion. On November 1, 1999, the trial court issued an order correcting the record on appeal, describing the nature of the charge conference as it related to the request by Burke's trial counsel for a withdrawal instruction. Burke has retained new counsel for this appeal.

Burke assigns thirteen errors to his trial counsel: (1) trial counsel's failure to adequately consult with Burke and explain the nature of the charge; (2) trial counsel's failure to file a motion for a bill of particulars; (3) trial counsel's failure to request and move for discovery; (4) trial counsel's failure to challenge the stop and search of a car driven by Burke in September, 1994 by the St. Charles, Missouri police; (5) trial counsel's failure to challenge the prosecutor's presentation of irrelevant and highly prejudicial evidence regarding the murder for hire of David "Slap" Moore, the unconsummated plans for murder of several other people, and other criminal acts of Kelsey, Chase, and Anvil, all of which were either committed before Burke was involved in the conspiracy or to which Burke has no connection; (6) trial counsel's failure to challenge the jury selection plan pursuant to *United States v. Ovalle*, 136 F.3d 1092 (6th Cir.1998), despite Burke's requests that counsel do so; (7) trial counsel's failure to object to numerous improper questions posed by the prosecutor and failure to challenge the admission of any of the documentary evidence offered into evidence at trial by the government; (8) trial counsel's acquiescence in the government's position that the plea agreements of Kelsey and Chase should not be admitted into evidence and should not be shown to the jury; (9) trial counsel's agreement to numerous stipulations at the end of trial; (10) trial counsel's failure to give an opening statement; (11) trial counsel's failure to challenge the admission of the testimony of Chase and Kelsey on the basis that their testimony violated 18 U.S.C. § 201(c)(2); (12) trial counsel's failure to make a motion for acquittal; (13) trial counsel's abandonment of his request for a jury instruction regarding withdrawal as a defense to the conspiracy and his failure to object at trial to the court's failure to give that jury instruction.

"In order to prevail [on a claim of ineffective assistance of counsel], the defendant must show both that counsel's representation fell below an objective standard of reasonableness, and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Kimmelman v. Morrison*, 477 U.S. 365, 374–75, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (citations omitted); *see also Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so up-

set the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Id.* at 374, 106 S.Ct. 2574. That said, "[i]neffective assistance of counsel claims are best brought by a defendant in a post-conviction proceeding under 28 U.S.C. § 2255 so that the parties can develop an adequate record on the issue." *United States v. Seymour,* 38 F.3d 261, 263 (6th Cir.1994). "Unless the record on appeal is adequate to assess the merits of the defendants' allegations, [this court] will not address an ineffective assistance of counsel claim raised for the first time on direct appeal." *United States v. Kincaide,* 145 F.3d 771, 785 (6th Cir.1998). The record (and any decision on the merits of the ineffective-assistance claim) in the instant case could benefit from collateral review by a district court. Moreover, in this particular case, trial counsel's actions and inactions raised in Burke's assignments of error "might be considered sound trial strategy." *See Cobb. v. Perini,* 832 F.2d 342 (6th Cir.1987) (citing *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)) (internal quotation marks omitted).

■ Burke next argues that the prosecution's evidence submitted to the jury was insufficient as a matter of law. "Since [the defendant] made no motion for judgment of acquittal [before the lower court], our review of the sufficiency of the evidence is limited to finding plain error resulting in a manifest miscarriage of justice." *United States v. Cox,* 957 F.2d 264, 265 (6th Cir.1992) (internal quotation marks omitted); *see also United States v. Swidan,* 888 F.2d 1076, 1080 (6th Cir. 1989). Even when the issue has been properly preserved for appeal, the reviewing court may not judge witnesses' credibility. *See United States v. Welch,* 97 F.3d 142, 148 (6th Cir.1996) (citing *United States v. Hilliard,* 11 F.3d 618, 620 (6th Cir.1993)) ("In addressing sufficiency of the evidence questions, this Court has long recognized that we do not weigh the evidence [or] consider the credibility of witnesses[.]"), *cert. denied,* 510 U.S. 1130, 114 S.Ct. 1099, 127 L.Ed.2d 412 (1994). And that is Burke's only line of attack on the jury verdict: the prosecution witnesses were not credible. There was sufficient evidence for a jury to conclude that Burke was guilty of distribution and possession with intent to distribute cocaine. First, there was the testimony of his accomplices which placed him within the conspiracy. Second, the credibility of these accomplices was bolstered by numerous pieces of evidence, such as tape recordings of conversations between Burke and the accomplices and business records (e.g., rolodexes which contained the phone numbers of the conspirators and affiliates of the Medellin cartel).

■ Finally, Burke charges that he was only personally responsible for distributing thirty-one kilograms of cocaine as opposed to the one-hundred and fifty kilograms of cocaine for which he was punished. He contends that he did not *personally* sell the rest of the shipments. He cites *United tates v. Meacham,* 27 F.3d 214 (6th Cir.1994), for the proposition that he should only be punished for the amount of cocaine he himself possessed and distributed. The *Meacham* court indicated that

> [e]ven under the Sentencing Guidelines, particularized sentencing is mandated, and differentiation between coconspirators is required. As this Court has recognized, because the scope of conduct for which a defendant can be held accountable under the sentencing guidelines is significantly narrower than the conduct embraced by the law of conspiracy, a sentencing judge may not, without further findings, simply sentence a de-

fendant according to the amount of narcotics involved in the conspiracy.

*Meacham,* 27 F.3d at 217 (citations and quotation marks omitted). The district court at sentencing specifically found that Burke, while not always "personally" selling the cocaine, did in fact participate significantly in acquiring the additional cocaine and distributing it. The sentencing judge found that Burke had acknowledged responsibility for the final one-hundred kilogram shipment. The judge further found that Burke was responsible for distributing the entirety of a ninety-eight kilogram shipment. The judge also expressed a belief that Burke was responsible for other amounts, but did not inquire further as any such finding was unnecessary to the case. It is clear that the district court did not arbitrarily assign Burke responsibility for the entire stream of cocaine from the conspiracy; rather, pursuant to *Meacham,* he made specific findings.

Burke finally contends that there was one kilogram of real cocaine and seventy-four kilograms of fake cocaine in the reverse sting rather than 100 kilograms as promised, so he should only be charged with at most seventy-five kilograms from that part of the conspiracy. His argument is meritless. "In a reverse sting, the agreed-upon quantity of the controlled substance would more accurately reflect the scale of the offense because the amount actually delivered is controlled by the government, not the defendant." UNITED STATES SENTENCING GUIDELINES § 2d1.1, comment n. 12.

For the foregoing reasons, the judgment of the district court is AFFIRMED.