**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name:  06a0696n.06
Filed:  September 26, 2006

**No. 05-5365**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| OMAR MENDOZA, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  DAUGHTREY and COOK, Circuit Judges, and CARR,[*] District Judge.

**PER CURIAM.**  The defendant, Omar Mendoza, pleaded guilty to a multiple-count indictment charging him with participation in a major interstate cocaine distribution operation.  In exchange for Mendoza's guilty plea, the government had agreed to recommend a reduction of his offense level, based on acceptance of responsibility under section 3E1.1 of the United States Sentencing Guidelines (U.S.S.G.), and not to oppose application of the "safety valve" provision of section 2D1.1(b)(6).  At sentencing, however, the government argued against adjustments under those sentencing guidelines based on conduct by the defendant that came to light after the plea agreement was executed.  The district court concluded that a section 3E1.1 reduction was not appropriate but applied the

---

[*]The Hon. James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

safety valve provision in section 2D1.1(b)(6), sentencing the defendant to 200 months of incarceration – a term of imprisonment that fell neither within the lower range proposed by defense counsel nor within the higher range advocated by the prosecution.

On appeal, the defendant initially argued that the sentencing order should be vacated and his case remanded for resentencing based on the government's failure to abide by the terms of the plea agreement. However, in a "supplemental brief" filed by new counsel, the defendant now contends only that the district court failed to apply section 3E1.1 correctly to the facts in this case and, therefore, illegally deprived the defendant of a three-level downward departure for acceptance of responsibility. Because counsel for the defendant advanced only the latter claim at oral argument as a basis for vacating his client's sentence, it appears that the defendant has abandoned his contention that his sentence was imposed in violation of Santobello v. New York, 404 U.S. 257 (1971). However, out of an abundance of caution, we have reviewed the sentencing procedure in light of both claims. We find no basis on which to vacate the defendant's sentence under either analysis, and we therefore affirm the district court's judgment.

## I.  **FACTUAL AND PROCEDURAL BACKGROUND**

The record establishes that between 1996 and 2003, the defendant participated in marijuana and cocaine trafficking between El Paso, Texas, and Memphis, Tennessee. During the first half of 2003, he received in Memphis approximately nine shipments of cocaine weighing approximately 10 kilograms each. He also gave the person who

delivered the narcotics to Memphis approximately $200,000 per shipment for payment to the suppliers in Mexico. Prior to these shipments, between 1998 and July 2001, the defendant had delivered to Memphis approximately five kilograms of cocaine per month, for a total of about 180 kilograms.

The defendant was indicted in 2004 on charges of conspiracy to distribute more than five kilograms of cocaine, conspiracy to commit money laundering, money laundering, and aiding and abetting money laundering, with an additional count calling for criminal forfeiture. He agreed to plead guilty to all counts of the indictment in exchange for the government's recommendations that "the Defendant's base offense level be calculated using at least 50 KG but less than 150 KG of cocaine" and that:

> (1) the Defendant receive full credit for acceptance of responsibility . . . provided the Defendant's conduct continues to clearly demonstrate acceptance of his personal responsibility for his offense up to the date of sentencing; (2) the Defendant not receive a sentencing enhancement for the Defendant's role in the offense . . . ; (3) the Defendant be sentenced at the low end of the applicable guideline range; (4) the Government will not oppose the Defendant receiving a ["safety valve"] downward departure . . . provided the United States Probation Office determines that the Defendant is entitled to such downward departure in Defendant's Pre-Sentence Report.

At the plea hearing, the district court explained all of the charges included in the indictment, as well as the maximum sentence for each. The Assistant United States Attorney, at the court's request, then summarized the terms of the plea agreement. He stated, on the record, the following:

In exchange for the defendant's plea of guilty in this case the government agrees to recommend the defendant's base offense level be calculated using at least 50 kilograms but not more than a hundred and fifty kilograms of cocaine.

In this regard Mr. Mendoza understands that this recommendation is not binding on the court.

Your Honor, neither the government nor any law enforcement can or does make any promises or representations to Mr. Mendoza as to what his sentence will be.

You Honor, pursuant to Rule 11(e)(1)(B) and in consideration for the defendant's plea of guilty the government will recommend that the defendant receive full credit for acceptance of responsibility provided the defendant's conduct continues to clearly demonstrate acceptance of responsibility.

Next that the defendant not receive a sentencing enhancement for his role in the offense.

Next that the defendant will be sentenced to the low end of the guideline range.

And finally, Your Honor, the government does not oppose the defendant receiving a downward departure according to the provision of the United States Sentencing Guideline 2D1.1(b)(6) or the safety [valve] provisions, Your Honor, provided that the United States Probation Office determines that the defendant is entitled to such a downward departure.

Your Honor, the government anticipates but does not commit to filing a motion for downward departure in this case. In the event the government does file a motion for downward departure, Mr. Mendoza understands that the recommendation [is] not binding on the court.

Your Honor, Mr. Mendoza agrees [that] certain property identified in the Verified Complaint of Forfeiture . . . is subject to forfeiture to the United States . . . .

After a colloquy with the defendant, the district court accepted the plea agreement, ordered

that it be filed in the record, and continued the case for sentencing.

In the pre-sentence report that was filed prior to the sentencing hearing, the probation officer concluded that the defendant was responsible for at least 290 kilograms of cocaine and computed the base offense level at 38. The report also indicated that the following adjustments were appropriate: a two-level enhancement for conviction of money laundering, a four-level enhancement for the role of organizer or leader in the criminal activity, and a three-level reduction for acceptance of responsibility. The resulting offense level was 41, for which the sentence range was 324 to 405 months. The report also contained a calculation of the sentence range under the plea agreement. Based on the limited quantity of cocaine indicated in the agreement, the base offense level was set at 36. The acceptance of responsibility and safety valve reductions, combined with the mandatory enhancement for money laundering, yielded a total offense level of 33, with a corresponding range of 135 to 168 months.

The pre-sentence report also indicated that, while the defendant was in detention prior to the April plea hearing, a phone call between the defendant and his father was recorded in which Mendoza's father said to him, "You'll meet with [defense counsel], tell them you only know people by nicknames, Pulga, Pato. Tell [your co-defendant] to say the same names." A second phone call with the defendant's father was also recorded, during which he said to the defendant, "As usual, tell them that you only know people by sight and didn't know names. Just say nicknames, you don't know more or where they're from. Even tell the same thing to [defense counsel]. Don't sign anything." According to the report, on June 29, 2004, two months after the plea hearing, while in a holding cell, the

defendant yelled "to other defendants awaiting court hearings" that one of his co-defendants – whom he identified by name – "talked too much."

The defendant responded to the pre-sentence report with a request that the court adhere to the plea agreement, including a downward departure under U.S.S.G. section 5K1.1, based on the fact that he had "extensively de-briefed and provided valuable information to the Government [that] . . . led to the arrest and indictment of" other participants in the distribution operation, as well as information pertaining to the method of smuggling the cocaine in from Mexico. In a position paper filed in response to the pre-sentence report and the defendant's objections, the government notified the court that in those "debriefing sessions" with Immigration and Customs officers, the defendant had told them "that he only knew people by sight, that he didn't know names, and that if he did know names it was only nicknames." The government also indicated that members of the defendant's family had tried to contact the co-defendant whom Mendoza had accused of "talking too much" and that the defendant had also attempted to contact, directly and through his family, another one of his co-defendants, all of which violated government orders and put various witnesses and others at risk of harm. The government contended that this conduct did "not continue to clearly demonstrate acceptance of personal responsibility" and that the offense level reduction contemplated by the plea agreement was therefore not warranted. The government did not argue that the defendant's conduct amounted to obstruction of justice but did decline to file a motion for a downward departure

under section 5K1.1, contending that the defendant had been of no assistance to the government.

At the ensuing sentencing hearing, the government offered testimony by an agent that supported the facts related in the pre-sentence report regarding the defendant's phone calls with his father and statements about his co-defendant while in a holding cell. Moreover, the agent also testified that the defendant had followed his father's advice regarding the provision of nicknames only; that the defendant had not cooperated at all before the superceding indictment was returned on April 6, 2004; and that the information provided by the defendant did not lead to the arrest or indictment of anyone else connected with the offenses.

The district court credited the government's submission that the defendant had made threats against his co-defendants and may have tipped a co-conspirator to flee the jurisdiction. The court also accepted the government's argument that the defendant had "not provid[ed] any substantial cooperation . . . that would warrant a downward departure if the guidelines were in place." Based on these determinations, the court denied the defendant a section 5K1.1 reduction for substantial assistance, as well as a section 3E1.1 reduction for acceptance of responsibility, "even though he . . . pled guilty and saved the government the benefit of a trial." Following the government's recommendation in the plea agreement to limit the conduct charged to no more than150 kilograms of cocaine, the court calculated a base offense level of 36 and also granted the safety valve reduction.

Ultimately, the court imposed a sentence of 200 months, which was 32 months above the maximum sentence contemplated by the plea agreement, but 124 months less than the minimum sentence possible under the facts reported by the probation office in the pre-sentence report.

## II. <u>DISCUSSION</u>

### A. *Alleged Error by the District Court*

On appeal, the defendant argues that the district court erred in failing to grant a three-level reduction in his base offense level for acceptance of responsibility under U.S.S.G. section 3E1.1. We gather that the gist of his contention is that he was entitled to such an adjustment, first, by not putting the government to trial and, second, "by truthfully admitt[ing] the conduct comprising the offenses of conviction." According to the defendant, the fact that he "was not totally forthcoming about the names and identities of the other 'participants' in criminal activity should only affect the applicability of a § 5K1.1 downward departure and not a § 3E1.1 downward adjustment." (Emphasis omitted.)

In his brief, Mendoza asserts, correctly, that under the application note to section 3E1.1, he was "not required . . . to volunteer, or affirmatively admit, relevant conduct beyond the offenses of conviction." When, however, as here, the offense of conviction is conspiracy, the defendant's withholding of information regarding co-conspirator conduct

in furtherance of the conspiracy may well provide less than a full account of his own involvement in the conspiracy, justifying denial of a section 3E1.1 reduction.

In addition to determining that the defendant was less than truthful about the full scope of the conspiracy, the district court also found that he "may very well have encouraged . . . someone to flee the jurisdiction[,] . . . has put other individuals in danger[,] . . . and [has] made what appear[s] to be veiled threats." The defendant now argues that this ruling by the district court cannot be sustained because, if true, it would support an upward adjustment under section 3C1.1 for obstruction of justice. But, no such upward adjustment was applied and, instead, the defendant was awarded a downward adjustment under the safety valve provision in section 2D1.1(b)(6). The defendant claims that this incongruity is emblematic of faulty sentencing and requires us to order re-sentencing.

We conclude that a remand for re-sentencing is unnecessary here. The application of the safety valve provision under the circumstances of this case is perhaps paradoxical, but there is no question that the district judge made findings that the defendant's conduct "d[id] not satisfy either the letter or the spirit of the rules that speak to acceptance of responsibility." Moreover, those factual findings are fully supported by the record and are, therefore, not clearly erroneous. Finally, we conclude that the 200-month sentence imposed on the defendant was reasonable, which is the standard by which it must be reviewed under the mandate of United States v. Booker, 543 U.S. 220, 261 (2005).

**B. *Alleged Breach of the Plea Agreement***

The defendant's initial brief alleged that the government had failed to abide by the terms of the plea agreement by arguing against reductions in sentence under both section 3E1.1, for acceptance of responsibility, and the safety valve provision in section 2D1.1(b)(6). With regard to section 3E1.1, the government claimed that the defendant had failed to establish that he had accepted responsibility for the offenses of conviction, pointing to the testimony of the government agent at the sentencing hearing to the effect that the defendant's conduct had put the safety of other co-defendants at risk and was more in conformity with the instructions that he received from his father than with the provisions of the agreement; that he had minimized his own involvement in the conspiracy, as well as that of his co-conspirators and his family in Texas; and that he had claimed that he knew his co-conspirators only by sight or by nicknames. The agent testified that he had been able to confirm that the defendant knew persons in Memphis who were involved in the drug-trafficking operation but were not identified by the defendant. Indeed, the government eventually decided not to call Mendoza as a grand jury witness based on its belief that "his information was unreliable, pretty nonspecific, untruthful."

Although this evidence is relevant principally to the government's determination to forego a section 5K1.1 motion for a downward departure based on substantial assistance, it is also relevant to the defendant's acceptance of responsibility under section 3E1.1, the application notes to which require, among other things, consideration of whether the defendant "truthfully admit[s] the conduct comprising the offense(s) of conviction, and truthfully admit[s] or [does] not falsely deny[] any additional relevant conduct for which the

defendant is accountable," and whether he provides "voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense." U.S. SENTENCING GUIDELINES MANUAL § 3E1.1 cmt. n.1(a) (2005). Under the Guidelines, a defendant seeking a reduction for acceptance of responsibility "may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under [section 3E1.1]." Id. But, as previously noted, the "offense of conviction" in this case is conspiracy, making more than just the defendant's activity relevant to inquiry by the government.

Moreover, although the district court in this case did not make a specific finding that the defendant had engaged in the obstruction of justice, perhaps because the presentence report did not mention it and the government did not argue such obstruction, the record clearly indicates that following his arrest, the defendant engaged in obstructive behavior – in failing to identify co-conspirators in Memphis whose identities were known to him, in following his father's instructions with regard to the names of those involved in the offenses charged against the defendant, in attempting to contact certain of his co-conspirators directly or through his family, in calling on them to maintain silence, and, in one instance, in endangering the life of a co-conspirator by spreading information that he was cooperating with the government. Clearly, the record would have supported a finding that the defendant engaged in the obstruction of justice, which finding would preclude a section 3E1.1 reduction in all but the most extraordinary circumstances. See id. § 3C1.1 cmt. nn.3-

4 (describing conduct to which the adjustment for "obstructing or impeding the administration of justice" applies).

We conclude that the government did not breach the plea agreement with regard to its change of position on a downward adjustment under section 3E1.1. Any complaint concerning the government's position on application of the safety valve provision must be considered moot, given the fact that the defendant actually received the benefit of a downward adjustment under section 2D1.1(b)(6).

## III. **CONCLUSION**

We acknowledge that the principles underlying the Supreme Court's opinion in Santobello v. New York, 404 U.S. 257, 262 (1971), require that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." In this case, the record reflects that the defendant's plea did indeed "rest on the agreement of the prosecutor." At the same time, however, the record fails to demonstrate that the government reneged on its promise with regard to a section 3E1.1 recommendation, given evidence in the record that the defendant was not in substantial compliance with the requirements of section 3E1.1. Certainly, we cannot say that the district court erred in finding that a reduction for acceptance of responsibility was unwarranted, both factually and legally, and we therefore AFFIRM the judgment of the district court, incorporating the court's sentencing order.