NOT RECOMMENDED FOR PUBLICATION
File Name:  15a0287n.06

No. 13-5264

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Apr 17, 2015 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| STEPHEN COOK, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:  MOORE, GIBBONS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Stephen Cook appeals his sentence on the basis that the government breached the parties' plea agreement.  The government seeks to enforce an appeal-waiver provision in the plea agreement.  We grant the government's motion to dismiss based upon the appeal waiver.

I.

Beginning in 2009, the United States Drug Enforcement Administration ("DEA") investigated a narcotics distribution ring that used commercial tractor-trailers to transport significant quantities of marijuana throughout the United States.  After a positive K-9 alert, border patrol agents searched a tractor-trailer registered to defendant Stephen Cook, uncovering over 1,000 kilograms of marijuana.  Authorities then obtained a wiretap to monitor Cook's telephone calls.

A grand jury indicted Cook and 15 others for conspiracy to possess with intent to distribute at least 1,000 kilograms of marijuana and conspiracy to possess with intent to distribute at least 500 grams of methamphetamine. Cook pled guilty to the marijuana count. In exchange, the government agreed to recommend that Cook receive the full reduction for acceptance of responsibility "provid[ed] [he] commits no new criminal offenses and continues to demonstrate an affirmative acceptance of responsibility, including acknowledging guilt in open court to the facts as set out in the indictment." Cook waived his right to appeal his sentence "unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure from the guideline range that the court establishes at sentencing," and waived his right to "challenge the manner in which the sentence was determined."

In calculating the base offense level, the Presentence Investigation Report ("PSR") included the following drug amounts: 6,622.56 kilograms marijuana, 30 kilograms cocaine (6,000 kilograms marijuana equivalent), and 2.47 kilograms methamphetamine (4,944.24 kilograms marijuana equivalent), totaling 17,566.8 kilograms marijuana equivalent. Additionally, the PSR applied a four-point role enhancement under U.S. Sentencing Guidelines § 3B1.1(a) and a three-point reduction for acceptance of responsibility under § 3E1.1, resulting in a Guidelines range of 210 to 262 months of imprisonment (total offense level 37, criminal history category I). The government did not object to the PSR. Cook objected to including cocaine and methamphetamine in the drug amount calculation and to the role enhancement.

At sentencing, the government stated that it was prepared to introduce evidence of intercepted telephone calls of Cook discussing cocaine sales. Cook withdrew his objection to including cocaine in the drug amount calculation. Ultimately, the court included cocaine in the drug calculation but removed methamphetamine.

In support of the role enhancement, the government called two witnesses. Thereafter, Cook also testified. The court applied the enhancement, relying in part on Cook's own testimony. Shortly thereafter, the government objected to any reduction for acceptance of responsibility, arguing that Cook had not testified truthfully about relevant conduct. The district court heard argument from both parties and denied the reduction. The government also argued that a two-level enhancement for obstruction of justice was appropriate under U.S. Sentencing Guidelines § 3C1.1 for providing materially false information to the court at sentencing. The district court applied the enhancement.

The court calculated the new Guidelines range as 360 months to life (total offense level 42, criminal history category I) and sentenced Cook to a low-end Guidelines sentence of 360 months. Despite the appeal-waiver provision in the plea agreement, Cook filed a timely appeal.

## II.

On appeal, Cook argues that the government breached the plea agreement by opposing a reduction for acceptance of responsibility. He also argues that the government breached the agreement by violating the covenant of good faith and fair dealing by seeking an obstruction of justice enhancement based on immaterial inconsistencies in testimony, and by urging the district court to include cocaine in the drug amount calculation.

"It is well settled that a defendant in a criminal case may waive his right to appeal his sentence in a valid plea agreement." *United States v. Smith*, 344 F.3d 479, 483 (6th Cir. 2003). Ordinarily, we review de novo "the question of whether a defendant waived his right to appeal his sentence in a valid plea agreement." *United States v. Keller*, 665 F.3d 711, 715 (6th Cir. 2011) (internal quotation marks omitted). However, because it is undisputed that Cook failed to

preserve his breach-of-plea-agreement claims for appeal, we review for plain error. *Puckett v. United States*, 556 U.S. 129, 134 (2009). Plain-error review involves four steps:

> First, there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, *i.e.*, affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the district court proceedings. Fourth and finally, if the above three prongs are satisfied, the court of appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Id.* at 135 (internal quotation marks, citations, and alterations omitted). "Meeting all four prongs is difficult, as it should be." *Id.* (internal quotation marks omitted).

We use traditional contract principles in interpreting and enforcing plea agreements because they are contractual in nature. *United States v. Bowman*, 634 F.3d 357, 360 (6th Cir. 2011). "But because plea agreements' constitutional and supervisory implications raise concerns over and above those present in the traditional contract context, in interpreting such agreements, we 'hold the government to a greater degree of responsibility than the defendant . . . for imprecisions or ambiguities in the plea agreement.'" *Id.* (quoting *United States v. Harris*, 473 F.3d 222, 225 (6th Cir. 2006)). Ambiguities are therefore construed against the government, especially because the government can take steps in drafting a plea agreement to avoid imprecision. *Id.* "The determinative factor in interpreting a plea agreement is not the parties' actual understanding of the terms of the agreement; instead, an agreement must be construed as a reasonable person would interpret its words." *United States v. Moncivais*, 492 F.3d 652, 663 (6th Cir. 2007).

A.

First, Cook argues that the government breached the plea agreement by opposing credit for acceptance of responsibility because he was legally entitled to dispute the role enhancement without denying responsibility. The government responds that the plea agreement allowed it to oppose credit for acceptance of responsibility after Cook falsely testified at the sentencing hearing regarding relevant conduct. According to the government, such false testimony is antithetical to affirmatively accepting responsibility. We agree.

> In exchange for Cook's guilty plea, the government agreed to
>
> recommend that [Cook] receive the full reduction for acceptance of responsibility under U.S. Sentencing Guidelines § 3E1.1, providing [Cook] commits no new criminal offenses and continues to demonstrate an affirmative acceptance of responsibility, including acknowledging guilt in open court to the facts as set out in the indictment.

The PSR recommended a reduction for acceptance of responsibility, to which the government concurred. However, after Cook testified at the sentencing hearing, the government changed its position:

> THE COURT: Does the government have any objection to the guideline calculations? I think you already told me you did not.
>
> [GOVERNMENT]: Only at this point I would object to the three-point reduction that's in the guidelines for acceptance.
>
> THE COURT: The government is not making a two-level reduction for acceptance of responsibility; is that correct?
>
> [GOVERNMENT]: That's correct.
>
> THE COURT: Do you want to be—is there anything further you want to say about the two-level reduction?
>
> [GOVERNMENT]: Judge, unfortunately, at this point I don't think it's appropriate that he should get a two-level reduction. And that's I think the risk that he took by choosing to take the stand and being caught in some very

significant inconsistencies. His testimony has put him at odds with what the facts are in this case. He didn't have to put himself in that position. He I think by taking the stand and saying what he did and taking the position he's taken, he's forfeited the right to any reduction for acceptance of responsibility because I think his position is antithetical to what acceptance means. So I really don't think he deserves any reduction at all for acceptance of responsibility at this point.

After hearing from defense counsel, the district court denied any reduction for acceptance of responsibility, stating:

> To accept responsibility, you have to tell the truth, and at the end of the day you also can't frivolously deny relevant conduct. If a defendant comes forward and says, these are the facts, I admit those are the facts, but those facts do not justify a two or four-level enhancement because I had a particular role in the offense, there is no question about acceptance in my mind at that point because there is no dispute about the facts. Anyone has a right to make a legal argument, and a good legal argument may prevail based on the facts. That's not what's happened here. What's happened here is the defendant has attacked the enhancement by way of a factual attack. He has not admitted the relevant conduct. In fact, from my view, he has frivolously denied the relevant conduct because he hasn't told the truth about it, and he hasn't told the truth about key elements of his role in the offense; what he did, who he recruited, what authority he had, how he operated. These are critical to decision making at sentencing. He hasn't told the truth about those things.

In assessing whether a defendant has demonstrated an acceptance of responsibility, a court may consider whether the defendant falsely denied or frivolously contested relevant conduct. Appropriate considerations include "truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct)." U.S.S.G. § 3E1.1 cmt. n.1(A) (2012). "Relevant conduct" includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1) (2012). Importantly,

a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction . . . . A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction . . . . *However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility.*

*Id.* § 3E1.1 cmt. n.1(A) (emphasis added).

Whether Cook falsely denied or frivolously contested relevant conduct requires us to examine Cook's testimony in light of the other evidence at sentencing. When Cook objected to the role enhancement, the government called two witnesses. First, Shelby County Sheriff's Department DEA Task Force Agent George Stauffer testified that he had listened to wiretapped telephone calls and had interviewed a confidential source and multiple co-defendants. Based on his knowledge from his involvement in the investigation, he testified that Cook had obtained tractor-trailers, recruited and coordinated drivers, organized drug sales, and selected customers.

Second, Ethel Foster, Cook's aunt and a co-defendant who had pled guilty, *United States v. Foster*, 2:11-CR-20006-8 (W.D. Tenn.), testified that Cook had called her "out of the blue" to ask if he could unload some "freight" at her house. Cook also asked if her husband, Larry Foster, would help. She denied any involvement with marijuana prior to his call. She also testified that she lent Cook $4,000 for diesel fuel after he promised to pay her back with double the money. After she realized that Cook was not going to pay her back, she, Larry, and Cook sold the remaining marijuana at her house to recoup the money. She denied that Cook specifically recruited her to sell marijuana, but her testimony supported that Cook had at least recruited her and her husband to unload and store the marijuana.

Cook also testified. Although he apologized to his family "for bringing them into this," he denied recruiting anyone into the conspiracy. (Sent. Tr., R. 872, ID 3025 ("I didn't recruit

anyone. Everybody came to me.").) He also denied coordinating transportation or "booking any freight." (*Id.* at 3022, 3039 ("I didn't get him to ship loads. We shipped loads together.").) He portrayed himself as a middle man or "go-between." (*See, e.g.*, *id.* at 3022, 3023 ("I just was getting $5,000 off the top of it because I was stuck in the middle. I knew everyone."), 3025, 3027.) Regarding Foster's testimony, Cook directly contradicted her characterization of the $4,000 as a loan for fuel. He testified, "[s]he never loaned me $4,000. She gave me $4,000 toward the marijuana that she was purchasing. . . . She was purchasing it to resell it. She called me. She said they wanted some marijuana, so I got them some marijuana." He explained, "[t]he $4,000 just went toward her bill because she owed that money to Carlos. It was Carlos' weed. I basically just stood for her that she was going to be good for it, but then at the end of the day I end[ed] up owing everybody for the stuff that they took." On cross examination, the government confronted Cook with evidence from an intercepted call in which Cook told someone that, "I went and I borrowed like a G [$1,000] from my aunt." Cook did not contest the accuracy of the evidence, but nonetheless testified that he never borrowed money from his aunt.

Evaluating the totality of the circumstances, the district court concluded that the government had satisfied its burden of proving that Cook had been a leader or organizer. The district court made the following findings of fact with respect to the role enhancement:

> [T]he important thing I think here is that Mr. Cook would tell individuals where to go and what to do. He would tell [co-defendant Vincent Berry] where to go in Jackson, Tennessee. Mr. Cook would tell [co-conspirator Fred Cole] to meet a driver and what to do. And Mr. Cook would make financial arrangements for these various individuals. . . . And the calls and the proof taken as a whole show Mr. Stephen Cook coordinating sales and discussing amounts and prices of transportation and customers.

* * *

And looking at the recruiting situation, based on the defendant's own testimony, a fair inference is that he recruited [co-defendant Terrance Brooks] at a bar or strip joint in McAllen, Texas. Whether all the driver[s] were hired by the defendant, it is hard to say based on the proof, but he certainly recruited Mr. Brooks into the organization.

* * *

[T]he fact that an individual may have participated in the past in drug trafficking does not mean one cannot be a recruiter for that individual into the organization of the conspiracy at hand, which is what happened here. So we have the defendant giving instructions about picking up and delivery, who to sell to and, in fact, how they handled sales. That's not inconsistent with all of the defendant's testimony. It's consistent with some of his conclusions and some of his testimony, but it is clear enough that he had enough control over these drugs to, according to his testimony, leave bundles . . . where he wanted to. In other words, he had sufficient control of this and decision making authority, for example, on the fourth load that he testified about to send bundles to his nephew in St. Louis [and] to send three bundles to Jackson, Tennessee . . . and he left five bundles with the Fosters. It is apparent from his own testimony that he made all these decisions.

Regarding Foster's testimony, the court found that Cook called Foster after they had not talked in months, announcing that he had some "freight" to unload and he wanted help unloading it. The court credited Foster's testimony that Foster had not previously been involved with marijuana and Cook had borrowed money from her but never paid it back.

With respect to Cook's testimony, the court found that Cook was "not a candid witness." The court gave several examples illustrating Cook's lack of credibility. It observed that his "testimony was not consistent with what the telephone calls clearly demonstrate" and "[h]e never denied that he said those things." In other words, the court could not reconcile Cook's self-interested portrayal of his role as a mere transporter with the content of the intercepted calls. The court also found that Cook's testimony "was not consistent with testimony he's given in this

court on prior occasion."[1]  In summary, the court found that Cook had "exercised decision making authority," "organize[d] . . . various marijuana runs," had discretion "to dispose of [marijuana] on his own authority," "attempted to recruit and did recruit accomplices including members of his own family," and "helped to plan and organize the offenses" by arranging transportation and choosing who would receive and who would store the marijuana.

Based on the court's factual findings, the government reasonably concluded that Cook, through his testimony, falsely denied relevant conduct and therefore failed to "demonstrate an affirmative acceptance of responsibility" under the terms of the plea agreement and U.S. Sentencing Guidelines § 3E1.1.  Therefore, the district court did not plainly err in failing to find that the government had breached the plea agreement by opposing acceptance of responsibility.

Cook's arguments to the contrary are unavailing.  As a preliminary matter, Cook argues that the government lacks sole discretion to assess Cook's acceptance of responsibility.  Indeed, under the terms of the plea agreement and our precedent, the government does not have sole discretion to determine whether Cook has demonstrated an acceptance of responsibility.  Our court has long imposed a reasonable-person standard for interpreting the terms of a plea agreement. *See, e.g.*, *Moncivais*, 492 F.3d at 663 (citing *United States v. Ykema*, 887 F.2d 697, 699 (6th Cir. 1989)).  In other words, the government may only change its position on acceptance of responsibility if a reasonable person would understand Cook to have failed to accept responsibility.  Even so, that the government lacks sole discretion is not dispositive.  The district court found that Cook had not accepted responsibility because he falsely denied relevant conduct.

---

[1]This appears to be a reference to Cook's testimony during a bond hearing.  The bond hearing transcript was not filed in this case.

Cook also argues that Foster's testimony regarding the $4,000 was false and contradicted the government's own "official" version of events. This is unpersuasive for several reasons. First, the court's denial of credit for acceptance of responsibility was premised on much more than the inconsistency between Cook and Foster about the $4,000. Cook's failure to accept responsibility went to Cook's denial of relevant conduct, including recruiting and attempting to recruit drivers, organizing the transportation for "marijuana runs," and having authority to determine when and where to dispose of marijuana. Second, with respect to the $4,000, it is not clear from the record that Foster's testimony directly contradicts an "official" version of events. The first time the court heard testimony about the $4,000 was at sentencing. The case agent did not testify on the issue. It was solely a dispute between Cook and Foster. Cook now argues that Foster's testimony regarding the $4,000 was untruthful because the PSR and intercepted calls confirm that Cook and Foster had discussed the sale of marijuana by telephone. However, the PSR does not address the $4,000 issue. Nor is the remaining PSR information entirely inconsistent with Foster's testimony.[2] Moreover, even if Foster's testimony is inconsistent with the record evidence, Cook did not object at sentencing. Therefore, Cook must show that the district court's error was plain. Here, the government could have reasonably interpreted Cook's

---

[2]Cook argues that the government's proffer at Foster's plea hearing proves that Foster testified untruthfully at Cook's sentencing hearing. There, the government quoted from an April 13, 2010, intercepted call from Foster to Cook. During the call, Foster indicates that she and her husband "went by that place and talked to a guy." They discussed the price Cook wanted, and Cook stated that Foster could upcharge from $550 to $700 and keep the profit. However, given the limited record evidence on Foster's role in the conspiracy, this evidence does not establish that Foster was untruthful about the relevant facts with respect to Cook's role enhancement. At Cook's sentencing, Foster did not testify as to the date of the first call between her and Cook. The intercepted call quoted at Foster's plea hearing suggests she had talked to Cook *at least* once before, leaving open the possibility that Cook initially called her to unload "freight," not the other way around. Indeed, the PSR clearly states that there was another call earlier that day, but does not indicate who placed the call. Ultimately, the intercepted call quoted in Cook's reply brief does not contradict that Cook called Foster and her husband to recruit them to unload and store marijuana. And nothing in the call addresses the disputed $4,000.

testimony about the $4,000 as frivolously denying that he recruited Foster and her husband to unload and store marijuana. (*See, e.g.*, Sent. Tr., R. 872, ID 3017 ("She called me. She said they wanted some marijuana, so I got them some marijuana.").) At a minimum, the government's opposition to credit for acceptance of responsibility based on its perception that Cook denied relevant conduct was at least "subject to reasonable dispute." *Puckett*, 556 U.S. at 135. Thus, any error was not plain.

Finally, the cases cited by Cook are distinguishable. In *United States v. Griffin*, 510 F.3d 354, 358−60 (2d Cir. 2007), the Second Circuit held that the government had breached a plea agreement by expressing concerns at sentencing that the defendant had not accepted responsibility, despite that it agreed "not to oppose" a reduction for acceptance. However, the plea agreement in that case was different and more favorable to the defendant. There, the government had firmly agreed not to oppose a reduction but retained the right to "respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government." *Id.* at 358. The court found that the government at sentencing went "well beyond the pale" of addressing factual inconsistencies by offering a thorough legal analysis unsolicited by the court. *Id.* at 364−65. In this case, by contrast, the plea agreement provides that the government's obligation to recommend credit for acceptance of responsibility is contingent upon Cook "demonstrat[ing] an affirmative acceptance of responsibility." Thus, when the government reasonably perceived Cook as frivolously denying relevant conduct, it was no longer obligated to recommend a reduction.

Also distinguishable is our unpublished decision in *United States v. Logan*, 542 F. App'x 484 (6th Cir. 2013). In *Logan*, the government breached a plea agreement when it failed to

"stand mute" on the issue of acceptance of responsibility by arguing that an enhancement for obstruction of justice was appropriate and that, "*therefore*, a reduction for acceptance of responsibility was not appropriate." *Id.* at 490. Nonetheless, we held that the error did not affect the defendant's substantial rights because he could not establish that "but for the government's breach of the plea agreement, the district court would have concluded that [defendant's case] was an extraordinary case and granted him the acceptance of responsibility reduction, when it found that an obstruction of justice enhancement was appropriate." *Id.* at 491−92. Although the plea agreement provision on acceptance of responsibility allowed the government to withdraw its recommendation if it "subsequently learn[ed] of conduct" inconsistent with acceptance, *id.* at 489, that provision was not the basis of decision in *Logan*. In this case, by contrast, the provision permitting the government to withdraw its recommendation is squarely before us. In accordance with the plea agreement, the government did not withdraw its recommendation until it perceived Cook at sentencing as falsely denying relevant conduct. Accordingly, *Logan* is distinguishable.

B.

Cook also argues that the government breached the plea agreement by violating the implied covenant of good faith and fair dealing by (1) moving for an obstruction of justice enhancement based on immaterial inconsistencies in testimony, and (2) including cocaine in the drug calculation despite that the government did not seek to indict him for a cocaine offense.

"Like all contracts, [a plea agreement] includes an implied obligation of good faith and fair dealing." *United States v. Hawkins*, 274 F.3d 420, 430−31 (6th Cir. 2001); *see also United States v. Murrey*, 531 F. App'x 653, 660 (6th Cir. 2013) (collecting cases). "In determining whether a party has breached the obligation or covenant of good faith and fair dealing, a court must examine not only the express language of the parties' contract, but also any course of

performance or course of dealing." 23 Williston on Contracts § 63:22 (4th ed.). Whether

particular conduct violates the covenant necessarily depends on the facts of the particular case.

*Id.* "[S]ince there is a presumption that all parties act in good faith, the burden of proving a

breach of the covenant of good faith and fair dealing is on the person asserting the absence of

good faith." *Id.* A party acts in bad faith when, "although not soliciting false evidence, [it]

allows it to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *see*

*also Stumpf v. Robinson*, 722 F.3d 739, 749 (6th Cir. 2013).

> The U.S. Sentencing Guidelines provide a two-point enhancement for obstruction if:
>
> (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense.

U.S.S.G. § 3C1.1 (2012). This includes "providing materially false information to a judge." *Id.*

§ 3C1.1 cmt. n.4(F). Information is "material" when, if believed, it "would tend to influence or

affect the issue under determination." *Id.* § 3C1.1 cmt. n.6. Except in extraordinary cases,

conduct resulting in an obstruction of justice enhancement ordinarily "indicates that the

defendant has not accepted responsibility for his criminal conduct." *Id.* § 3E1.1 cmt. n.4.

At sentencing, after the district court denied Cook a reduction, the government raised the

issue of obstruction. It stated:

> [GOVERNMENT]: Based upon the defendant's testimony where the defendant provided false information to the Court, I would submit that the Court did make a finding that the defendant's testimony regarding Ms. Foster was false, and of course that did impede the obstruction—or the sentencing in this matter.
>
> THE COURT: Well, it might be argued that it attempted to. I can't say that.
>
> [GOVERNMENT]: That is included in the enhancement where it states that if, one, the defendant willfully obstructed or impeded or attempted to obstruct or

impede the administration of justice with respect to the investigation, prosecution or sentencing of the instant offense of conviction, we submit under Application Notes 4(f), providing materially false information to a judge would qualify, making it a base offense level 42.

THE COURT: [Defense counsel]?

[DEFENSE COUNSEL]: Your Honor, I think the testimony was clear, and I haven't seen anything as it relates to the $4,000 that was borrowed. There is a thousand dollars if anything related to these people. I'm assuming that's what the false statement is.

THE COURT: The statement as I understand it, I'm not sure it's limited to one statement, but the specific statement that I think was cited was that Ms. Foster took the stand and she testified that she was home alone, the defendant called her, the defendant came by, defendant ultimately left marijuana there, he testified five bundles . . . and she testified that the defendant needed money for diesel fuel, that she loaned him $4,000 for diesel fuel, that he promised to repay her, in fact, promised to double her money, she never got the payment. In fact, she was left with this marijuana which she used very poor judgment in attempting to sell or recover her money.

The defendant's testimony is directly opposite to hers. In fact, he testified under oath that she was a liar. He said that she didn't lend him any money, that he left the marijuana there because she was buying it, that he was—that she paid him a thousand dollars or whatever, any payment that he received from her was as payment, down payment on the marijuana which she was buying from him and she never paid for. I concluded that she was telling the truth and he wasn't based on the total context of the case as well as having heard the testimony of both of them and observed them in open court.

\* \* \*

THE COURT: He agreed that he made the statement [on tape about having borrowed $1,000 from his aunt], but he didn't agree that it was accurate. In fact, he said that that was not a borrowing, he didn't borrow any money from her, she gave him money in partial payment for marijuana that she was to sell. I didn't get too far into this, but basically the man said his whole family were a bunch of thieves who were out to make the most money they could, and they were all wrong, and he was right, that he was the one who was approached by all these individuals and each one of them was responsible and he's not responsible. That was essentially his testimony. That's not testimony I credit. And this is a piece of that whole testimony.

But it is the clearest situation where there is an absolute contradiction in the testimony that I cannot reconcile without believing one and not the other because there isn't middle ground on that testimony. And he made it perfectly clear there wasn't a middle ground when he called his aunt a liar.

\* \* \*

And he's in a perfect position to know exactly what happened because he was a party to the transaction. So I don't know how I come back to that conclusion without also concluding that he was willful in attempting to obstruct or impede the administration of justice as to the sentencing in this case. And it's the instant offense of conviction that's at issue, and the obstructive conduct relates directly to the offense of conviction and relevant conduct. It's conduct that's part and parcel of what he was doing and what he denies he was doing. It's not something that's so vague to be—well, here's my role or here was not my role. It's a specific fact, and it's not the only situation here, but it's the most obvious where he I believe has set out to and has not succeeded but attempted to impede the administration of justice as stated in 3C1.1. Therefore my conclusion is the two-level enhancement is appropriate.

Cook argues that the government violated the covenant of good faith and fair dealing by moving for an obstruction of justice enhancement. In effect, Cook argues that the government must have known that Foster's testimony was false and failed to correct it. We disagree because Cook has not established that the government pursued the obstruction enhancement in bad faith.

First, Cook's argument necessarily depends on his assumption that "Foster's account cannot be reconciled with the 'official' version" of events. As outlined above, given the limited evidence in the record on the government's theory of Foster's role in the conspiracy, Foster's testimony is not inherently incompatible with the evidence in the case. In any event, it is not so inherently irreconcilable that we must infer, over a presumption of good faith, that the government should have known Foster's testimony was false and that it breached the covenant by failing to bring its falsity to the court's attention. Second, the record is consistent with the government's position that it sought the enhancement, and the court applied it, for valid reasons, including multiple inconsistencies in Cook's testimony, not merely the $4,000 dispute. The

-16-

court explained that Cook's testimony about the $4,000 was one in a series of incredible statements. The loan was merely the "most obvious" example. Cook has not satisfied his burden of establishing that the government acted in bad faith.

Cook's final argument is that the government breached the covenant of good faith and fair dealing by negotiating a plea on the marijuana charge but subsequently including cocaine in the base offense level drug calculation. Cook summarizes his position as follows:

> [T]he government has a duty, under the implied covenant of good faith and fair dealing, to disclose any uncharged conduct involving a substantial quantity of an entirely different controlled substance which will expose the defendant to significantly more severe treatment under the Guidelines.

The government responds that Cook was on notice of cocaine sales as relevant conduct because he received summaries of the intercepted calls during discovery. Cook's argument fails under plain error review.

"With respect to [drug crimes], the defendant is accountable for all quantities of [drugs] with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of [drugs] that were within the scope of the criminal activity that he jointly undertook." U.S.S.G. § 1B1.3 cmt. n.2 (2012). "Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level." *Id.* § 2D1.1 cmt. n.5 (cross-referencing § 1B1.3 on relevant conduct).

Some courts have expressed disapproval of the practice of indicting "defendants on relatively minor offenses and then seek[ing] enhanced sentences later by asserting that the defendant has committed other more serious crimes for which . . . the defendant was not prosecuted and has not been convicted." *United States v. Bacallao*, 149 F.3d 717, 721 (7th Cir. 1998) (internal quotation marks omitted). Nonetheless, in this case, Cook has not met his burden

of showing the government's conduct was undertaken in bad faith. Cook argues that there was "no reason why the government could not have disclosed, at the time of the negotiation of the plea agreement, its intention to seek an enhanced sentence based on the uncharged quantity of cocaine." But even assuming that the government intended to include cocaine in the calculation at the time of the plea negotiations—which Cook has not established—such circumstances do not inherently amount to bad faith. And they do not amount to plain error.

Cook has not satisfied his burden of showing that the government breached the plea agreement. In light of the valid appeal-waiver provision in the plea agreement, dismissal is warranted.

## III.

For these reasons, we grant the government's motion to dismiss.