**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0636n.06

Case No. 18-2396

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Dec 26, 2019<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| GUILLERMO RODRIGUEZ, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | **OPINION** |
| | ) | |

BEFORE: CLAY, THAPAR, and NALBANDIAN, Circuit Judges

NALBANDIAN, Circuit Judge. Guillermo Rodriguez pleaded guilty to a conspiracy charge for a fraud scheme involving stolen credit card numbers. He now appeals his sentence, arguing that (1) the trial court should not have applied a guidelines leadership enhancement, (2) the trial court should have credited him with acceptance of responsibility, and (3) the government breached the plea agreement at sentencing. We AFFIRM.

**I.**

Guillermo Rodriguez participated in a fraud conspiracy organized in Florida. It ended with Rodriguez pleading guilty to conspiracy to commit wire fraud. Nine other participants received convictions over this scam. The scam's participants obtained unsuspecting gas-station customers' credit card and bank information by using data-skimming devices secretly placed inside gas station pumps. And the devices re-encoded credit card or bank account information onto magnetic strips

of other credit cards or stored-value cards (SVCs). Participants took those re-coded cards and bulk purchased SVCs during wide-ranging interstate buying trips.

As part of the scam, the fraudsters travelled to Michigan. In 2015, gas stations throughout Michigan discovered that someone had tampered with and installed electronic devices on the pumps. Those gas stations' customers also began noticing unauthorized charges on their credit accounts made at retail outlets such as Meijer and Walmart. Credit card companies found that the compromised accounts shared a common thread: the account holders had all bought gas at the same gas station or at the same gas pump shortly before unauthorized purchases showed up on the accounts.

That same summer, the fraud conspiracy popped up on law enforcement's radar. The Eaton County Sheriff's Department stopped one of the scam's participants, Yael Alfonso, for speeding in a rental car. During that stop, Alfonso consented to a search of his car. Officers found seven stacks of gift cards, labeled with their dollar amounts starting at $1,300. They quickly figured out that the cards in Alfonso's wallet were re-encoded credit cards and placed Alfonso under arrest.

Law enforcement soon connected Alfonso and other conspirators, including Rodriguez, with the gas station scheme. In November 2017, a three-count First Superseding Indictment was filed in the United States District Court for the Western District of Michigan. It named Rodriguez and two other co-defendants. Less than a year later, Rodriguez pleaded guilty to the first count, conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1349 and 1343. By motion of the United States, the district court dismissed the two other counts.

At the guilty plea hearing, the government summarized proof that it would have presented at trial, including the other defendants' testimony. It explained the contents of that testimony.

2

Rodriguez conceded the accuracy of the government's summary and that the facts established his guilt. But he let the court know that he would dispute the government's position on his role in the scheme.

A Presentence Report (PSR) was prepared and Rodriguez made four objections to the report. Relevant to this appeal, he objected to the recommended four-level enhancement to his sentence under United States Sentencing Guidelines Section 3B1.1(a) for being an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. Rodriguez explained that he was not the leader, that he only went to Michigan to buy a truck, and that his only role was to drive other defendants between the fraud locations. The PSR cited Rodriguez's statement to recommend he not receive credit for accepting responsibility.

The government had no objections to the PSR. But it did note its desire to present additional proof on the leadership enhancement at sentencing. Before the government presented its evidence at sentencing, the district court noted Rodriguez's objections to the PSR. The court also granted counsel's "request [for] a standing objection to all hearsay statements made by the officer" to support the government's position in favor of the leadership enhancement. (R. 144, Tr. 11/21/18, PageID 835.)

The government then put on proof of Rodriguez's role in the conspiracy as a leader and organizer. It provided testimony from one witness, FBI Special Agent Chris Rodolico, who recounted statements from Rodriguez's co-defendants and the conspiracy participants on Rodriguez's role as a leader in the scheme. Rodolico also presented Rodriguez's historical cell-service location information (CSLI) which established the phone's shared location with multiple series of fraud transactions. And he presented various evidence of cell phone contacts between other participants and Rodriguez as well as evidence of Rodriguez's regular trips to Michigan on

3

the same flight as the other participants. After the government's direct examination, Rodriguez's counsel cross-examined Rodolico on the hearsay evidence. Given the "totality of the circumstances" and the evidence before it—Rodolico's testimony on direct and cross, as well as the other evidence he presented the court—the district court applied the four-level enhancement. (*Id.* at 882–83.)

The district court then considered whether it should credit Rodriguez with a two-level acceptance reduction under Sentencing Guidelines Section 3E1.1(a). At that time, Rodriguez argued for the credit because he pleaded guilty and saved the government from having to go to trial. But after hearing from the government on the matter, the district court denied the credit. It did not believe Rodriguez had shown enough to receive the acceptance credit. It found Rodriguez's truck-buying story "very clearly untrue, particularly based on the evidence [the court] heard this morning." (*Id.* at 890 (describing the story as "flatly untrue").) On that basis, it affirmed the PSR's recommendation to withhold the acceptance credit.

After its rulings on the different sentencing enhancements and reductions, the court invited Rodriguez to speak. Yet again, he repeated the same truck-buying story. During its closing statement, the government approved the district court's denial of Rodriguez's acceptance credit. To make this point, the government pointed to Rodriguez's most-recent statement before the court. Rodriguez's "audacity to repeat the same story that he told [the PSR writer]," the prosecutor explained, "pretty much destroy[ed] any argument that somehow the Court erred in deciding not to award acceptance of responsibility." (*Id.* at 897.) Rodriguez now appeals his sentence.

**II.**

Rodriguez alleges three errors. He claims that (1) the district court erred when it applied the four-level sentence enhancement for leadership over his objection; (2) the district court erred by denying his acceptance of responsibility; and (3) the Government breached its plea agreement with him. We review each in turn.

**A.**

First, Rodriguez argues against the district court's imposition of the four-level leadership enhancement to his sentence under the Sentencing Guidelines Section 3B1.1(a). He argues both that his participation in the fraud did not warrant a leadership enhancement and that the district court violated procedural due process in imposing it.

This court reviews sentencing enhancements under Section 3B1.1 with deference. *United States v. Washington*, 715 F.3d 975, 982–83 (6th Cir. 2013).[1] "The trial judge is most familiar with the facts and is best situated to determine whether someone is or is not a 'leader' of a conspiracy." *Id.* at 983. "Deferring to this advantage is appropriate." *Id.* This deference extends to this court's evaluation of the relationship between "the evidence presented and the nature of the conspiracy" as well as "the truth of the evidence [which] is an underlying credibility issue." *Id.* We review the district court's factual findings for clear error.

The leadership enhancement under Section 3B1.1(a) allows for a four-level sentencing enhancement "if the defendant was an organizer or leader of a criminal activity that involved five

---

[1] This court usually reviews legal conclusions de novo. *United States v. Kaminski*, 501 F.3d 655, 667 (6th Cir. 2007). Rodriguez asks us to do that here. We clarified in *United States v. Washington*, however, that we would extend the Supreme Court's decision to review deferentially sentencing enhancements under Section 4B1.2 to our "review of the legal conclusion that a person is an organizer or leader under Section 3B1.1." 715 F.3d 975, 982–83 (6th Cir. 2013) (extending *Buford v. United States*, 532 U.S. 59, 66 (2001)).

or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). To determine whether a defendant "was an organizer or leader," courts should consider:

> [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

*Id.* § 3B1.1 cmt. n.4. To find the defendant a leader, "the record must show that the defendant had control over another criminal participant, and the court must make a finding to that effect." *United States v. Bertram*, 900 F.3d 743, 753 (6th Cir. 2018).

The main thrust of Rodriguez's arguments is that Yunier Cudello-Albelo, another participant, was the leader. He may or may not have been. But more than one person can qualify as a leader or organizer of a scam. U.S.S.G. § 3B1.1 cmt. n.4. So the district court was not foreclosed from concluding that Rodriguez was a leader as well.

Giving the district court's conclusion its due deference, we cannot conclude that the district court erred in applying the leadership enhancement. And the district court's factual findings were not clearly erroneous. The conspiracy involved at least five participants. The district court summarized the evidence presented at sentencing: the "testimony of the agent based on his interviews of the various participants in this scheme," "the Power Point showing [Rodriguez's] presence in and around" the locations of the fraud, "the cell phone contacts" between Rodriguez and Albelo, the fact that Rodriguez often flew to Michigan on the same flights with the other participants, and the fact that the scam separated those who "d[id] the leg work" and "the brains behind the operation, the people who use the skimmers and install them, take them out, make the cards and so forth." (R. 144, Tr. 11/21/18, PageID 882–83.) It then found that all the evidence combined gave it enough to "reasonabl[y] conclu[de] based on a preponderance of the evidence

and the totality of the circumstances that Mr. Rodriguez was in fact a leader in this group." (*Id.* at 883.)

The record reveals Rodriguez's control over the other participants. Most telling is the authority and control Rodriguez asserted over the participants' funds. "[A]t the end of the day," Rodriguez "would get all the proceeds and divvy them back out." (*Id.* at 839.) After all, the power of the purse is the power to control. *See, e.g.*, *United States v. Butler*, 297 U.S. 1, 86 (1936) (Stone, J., dissenting). Rodriguez's actions also showed the high degree of planning and organizing that he personally put into the fraud, as compared to others in the group. With help from Albelo, Rodriguez successfully sought Albert Alphonso's involvement in the scam. Together, they asked Alphonso to drive to further the scam. Rodolico recounted that they told Alphonso "they liked [Alphonso's] car because it had Michigan plates and it was inconspicuous." (R. 144, Tr. 11/21/18, PageID 841.) So Alphonso agreed to drive them from store to store for pay. And Alfonso informed Rodolico that Rodriguez often reprimanded Albelo for being too "visible" during purchasing operations. (*Id.* at 840.) Rodriguez told Albelo to "allow the workers to just work and then harvest the fraudulent gift cards" later. (*Id.*) These statements—showing the control Rodriguez exercised over his co-conspirators—reinforce his leadership role.

Rodriguez also urges us to find procedural errors in the district court's leadership determination. He recognizes that district courts may consider hearsay evidence to set a defendant's sentence. But the defendant's right to due process requires that the district court allow the defendant to refute the hearsay and requires that the hearsay "bear some minimal indicia of reliability." *United States v. Hamad*, 495 F.3d 241, 247 (6th Cir. 2007) (citation omitted). To meet the minimal-indicia-of-reliability hurdle, "due process requires that [the evidence provide] *some* evidentiary basis" or "some minimal indicium of reliability beyond mere allegation." *United*

7

*States v. Silverman*, 976 F.2d 1502, 1512–13 (6th Cir. 1992) (citations and internal quotation marks omitted). We have in the past characterized this as "a relatively low hurdle." *United States v. Greene*, 71 F.3d 232, 235 (6th Cir. 1995).

The district court provided Rodriguez ample opportunity at sentencing to challenge the hearsay evidence supporting his leadership status. On top of allowing Rodriguez's counsel to request a standing objection to all the hearsay evidence offered, the court permitted and responded to his counsel's specific objections during that testimony. (R. 144, Tr. 11/21/18, PageID 838 (leading question), 840 (same), 853 (hearsay and expert opinion).) It also allowed his counsel to cross-examine Rodolico over the hearsay testimony. That is enough to satisfy due process. *See, e.g.*, *United States v. Newell*, 977 F.2d 583, 583 (6th Cir. 1992) (per curiam) (finding that the defendant had "ample opportunity to challenge the hearsay testimony offered during the sentencing proceeding" after his counsel cross-examined all witnesses who offered hearsay evidence at sentencing).

Rodriguez argues, however, that the district court still fell short. (Appellant's Br. at 22.) To do so, he points to statements made by the court at sentencing. (*Id.* at 20.) For example, the court sustained the government's objection against opposing counsel's attempt to impeach Rodolico's credibility with the PSR and then opined:

> I would also point out that I'm not entirely sure where you're going with this. The credibility of these various witnesses, how they were viewed by the agent, and what made it in the presentence report, you are drilling down into some fairly esoteric issues here that I'm not sure are really relevant to the bottom line of determining whether your client was a leader in this scheme. I mean you can carry that to all sorts of extremes in terms of who saw or believed or knew, but I don't think you need to drill quite that deeply.

(R. 144, Tr. 11/21/18, PageID 871; *see* Appellant's Br. at 20–21 (alleging the district court erred when it made those statements).)

The court does refer to the counsel's questioning as "fairly esoteric" and voices its uncertainty on the relevance of counsel's questions. But not once did it cut the cross-examination short. In fact, the court permits counsel to continue but merely points out and advises counsel on his cross-examination methods. Counsel's response to the court's statements further supports this point. He thanks the court for its "advice" and "guidance" before again picking up the same line of cross-examination. (R. 144, Tr. 11/21/18, PageID 872–73.)

Rodriguez also suggests the district court's statements prove it failed to evaluate the reliability of the hearsay evidence. They do not. In fact, the court never questions the significance of counsel's attempts to "attack the credibility" of the hearsay evidence. (*Id.* at 874.) It merely questioned counsel's *methods* of doing so. It characterized the counsel's methods as "exhaustive" given the low hurdle Rodriguez needed to overcome to convince the court of the hearsay's lack of reliability. (*Id.* at 873–74 (describing counsel's efforts as "grind[ing] this evidence a little too finely" given the "standard of review on your [credibility] attack is a preponderance of the evidence").) Even then, the court allows it. (*Id.* at 874 (instructing counsel to "carry on").) Considering the "totality of the circumstances" and the evidence before it, including the reliability of the hearsay evidence, it made the "reasonable conclusion" that the government satisfied its burden to show Rodriguez's role as a leader. (*Id.* at 883.)

Accordingly, we reject Rodriguez's procedural challenges to the district court's leadership determination at sentencing.

**B.**

Second, Rodriguez alleges the district court erred when it denied Rodriguez credit for acceptance of responsibility. Whether a defendant has accepted responsibility for a crime is a factual question. We review the district court's acceptance-of-responsibility determination for

clear error. *United States v. Miller*, 48 F. App'x 933, 944 (6th Cir. 2002) (citing *United States v. Meacham*, 27 F.3d 214, 216 (6th Cir. 1994)). "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference." *Id.* (quoting U.S.S.G. § 3E1.1 cmt. n.5). But if the only issue presented is whether the reduction should apply to uncontested facts, that is a question of law we review de novo. *United States v. Denson*, 728 F.3d 603, 614 (6th Cir. 2013). The district court did not clearly err by finding that Rodriguez failed to accept responsibility. And it did not err by not applying the credit to Rodriguez's sentence.[2]

The defendant has the burden to prove acceptance of responsibility at sentencing by a preponderance of the evidence. *United States v. Donathan*, 65 F.3d 537, 541 (6th Cir. 1995). "[A] defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction." U.S.S.G. § 3E1.1 cmt. n.1(A). In fact, he "may remain silent in respect to relevant conduct beyond the offense of conviction" and still obtain acceptance credit under the sentencing guidelines. *Id.*

But a sentencing court may refuse to apply the credit for "conduct of the defendant that is inconsistent with [an] acceptance of responsibility." U.S.S.G. § 3E1.1 cmt. n.3. A defendant who

---

[2] We recognize the tension Rodriguez grapples with in his arguments—his ability to challenge the sentencing enhancement versus his ability to seek an acceptance credit. Defendants may challenge sentencing enhancements. But a defendant may not use a challenge as a vehicle to frivolously contest, minimize, or falsely deny relevant conduct and expect this court to find the district court clearly erred in its finding that he did not accept responsibility. We have addressed the distinction between contesting sentencing enhancements and failing to accept responsibility. And we recognized the difficulty that arises when a defendant contests a sentencing enhancement but wants to avoid "jeopardizing credit for acceptance of responsibility." *United States v. Lay*, 583 F.3d 436, 449 (6th Cir. 2009) (recognizing that "[c]ertainly, the position of a defendant who must testify in order to contest an improper enhancement requires the treading of a fine line"). "But the solution to that dilemma is to testify honestly, without falsely denying relevant conduct." *Id.* We do not begrudge a defendant's ability to challenge sentencing enhancements or argue for credits at sentencing, but we do reject the idea that his ability to do so allows him to tell tall tales.

"falsely denies, or frivolously contests, relevant conduct that the court determines to be true" acts "inconsistent[ly] with acceptance of responsibility." *Id.* § 3E1.1 cmt. n.1(A); *see also United States v. Cook*, 607 F. App'x 497, 500–01 (6th Cir. 2015). The defendant's attempt to minimize relevant conduct is also inconsistent with acceptance of responsibility. *See United States v. Wolfe*, 71 F.3d 611, 616 (6th Cir. 1995) (rejecting acceptance credit where the district court properly found that the defendant "attempted to mischaracterize" or "spin" his conduct and "minimize his responsibility" even after admitting to that conduct).

Rodriguez alleges that the district court erroneously refused him acceptance credit based on its finding that he "minimized his conduct based on the [PSR]." (Appellant's Reply Br. at 13.) He argues that the district court could not find that he "falsely denied or frivolously contested relevant conduct" at sentencing based on his truck-buying story. (Appellant's Br. at 26 (citation omitted).) And he contests the district court's ability to conclude that the story is untrue because Rodriguez never offered any details—time or place—about the story. (Appellant's Reply Br. at 8, 10, 13.)

Quibbling over these details misses the mark. The district court did not buy Rodriguez's story not because it found that the timing or the location of the truck-buying contradicted any evidence the government offered. It did not buy the story because it found, based on the evidence presented, that Rodriguez led the scam, rather than got swept into it by others.

The district court did not err when it found that Rodriguez was a leader. *See* discussion *supra* Section II.A. It thus was not out of bounds when it found Rodriguez's truck-buying story— that Rodriguez's "*only* criminal conduct was driving" the other fraudsters around and that "he was a minimal participant"— "frivolous[]" or a "false[] deni[al]" of relevant conduct. (R. 125, PSR, PageID 718 (emphasis added).)

11

Rodriguez also argues that the sentencing court could not have concluded that he frivolously contested relevant conduct because Rodriguez's "objections" to the leadership enhancement "do[] not give rise to the legal meaning of the term 'frivolous.'" (Appellant's Br. at 26.) He correctly explains that "[Section] 3E1.1 does not define a 'frivolous[] contest[].'" (*Id.* (citation omitted).) He urges us to adopt the Fifth Circuit's understanding of "frivolous": "[l]acking a legal basis or legal merit; not serious; not reasonably purposeful." (*Id.* (alteration in original) (quoting *United States v. Santos*, 537 F. App'x 369, 375 (5th Cir. 2013)).) He explains that his challenges to his sentencing enhancement could not lack "legal basis or legal merit" and so could not be "frivolous[]" under Section 3E1.1.

Rodriguez misses the mark again. The district court had found Rodriguez's challenge to the leadership enhancement without legal merit. And it concluded that he lied in his arguments against the enhancement. That he again asserted the opposite—that he did not lie and only participated rather than led the scam—does not revive the legal merit of those arguments.

## C.

Last, Rodriguez alleges that the government breached its plea agreement with him. He raises this claim for the first time on appeal. Whether the government has violated a plea agreement is a question of law that we usually review de novo. *United States v. Wells*, 211 F.3d 988, 995 (6th Cir. 2000). Prosecutors are "held to meticulous standards of performance" and we "will thus construe ambiguities in a plea agreement . . . against the government." *United States v. Merlo*, 464 F. App'x 518, 522 (6th Cir. 2012) (omission in original) (quoting *United States v. Moncivais*, 492 F.3d 652, 662 (6th Cir. 2007)). When, as here, the appellant raises these claims for the first time on appeal, however, we review for plain error. *Puckett v. United States*, 556 U.S. 129, 136 (2009).

12

To find plain error, this court must first make four findings. We must find that (1) "an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned . . . by the appellant," *United States v. Cook*, 607 F. App'x 497, 499 (6th Cir. 2015) (quoting *Puckett*, 556 U.S. at 135); (2) "the legal error [is] clear or obvious, rather than subject to reasonable dispute," *id.* (citation omitted); (3) the error "affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the district court proceedings," *id.* (citation omitted); and (4) "the error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *United States v. Griffin*, 466 F. App'x 491, 494 (6th Cir. 2012) (alteration in original) (quoting *Puckett*, 556 U.S. at 135) (internal quotation marks omitted). From there, this court "has the *discretion* to remedy the error." *Cook*, 607 F. App'x at 499 (citation omitted).

We cannot find that the government committed a "clear or obvious" legal error in its statements during sentencing. In fact, we cannot find that the government committed any error and thus find it did not breach its plea agreement here.

In the plea agreement, the government and Rodriguez agreed that the government would not oppose his request for an acceptance of responsibility reduction:

> The U.S. Attorney's Office agrees not to oppose the Defendant's request for a two-level reduction of his offense level for acceptance of responsibility under § 3E1.1(a) of the Sentencing Guidelines. However, the U.S. Attorney's Office reserves the right to object to Defendant's request if it subsequently learns of conduct by the Defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1.

(R. 81, Plea Agrmt., PageID 241.)

Rodriguez argues that the government breached the plea agreement when its attorney discussed acceptance credit at sentencing. He points specifically to the government's response to

13

the district court's invitation to speak on acceptance credit. The government said that it did not "want to be heard on the acceptance issue" but that

> I don't think anyone should ever lose acceptance for having an attorney make a legal argument. I think it should be based upon what a defendant says or doesn't say, admits or doesn't admit. So if the Court decides . . . not to grant [acceptance] it should be based on what Mr. Rodriguez told the presentence writer about how [']I was just up here, I don't know, looking to buy a truck and then I got roped into this.['] That's nonsense. On the other hand, [] if the Court does decide, look, the man pled guilty, and he didn't go far enough across the line to lose acceptance, then the government is going to move for the third level based on its agreement.

(R. 144, Tr. 11/21/18, PageID 889.)

To evaluate whether the government breached the plea agreement, we evaluate the government's actions given the agreement. To do so, we "use traditional principles of contract law." *Wells*, 211 F.3d at 995; s*ee also Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) ("[A] plea bargain itself is contractual in nature and 'subject to contract-law standards.'" (quoting *United States v. Krasn*, 614 F.2d 1229, 1233 (9th Cir. 1980)). A plea bargain's content is a question of fact that we review for clear error. *Wells*, 211 F.3d at 995.

If a written contract's text is clear and unambiguous, this court gives the text its plain and usual meaning. *See* 17 Am. Jur. 2d Contracts § 325 (explaining that "[u]nambiguous contractual language is conclusive upon the parties and the courts"); *see also Baker*, 781 F.2d at 90 (refusing to use an affidavit to prove that an "unambiguous[]" plea agreement is something "other[] than it appears"). The plea agreement here only required that the government "not [] oppose" the acceptance credit. And the government fulfilled that obligation.

To "oppose" is "to place opposite or against something." *Webster's Third New Int'l Dictionary Unabridged* 1583 (1967). Here the government took no position inconsistent with its plea agreement. At sentencing, it did speak on acceptance credit. But it never promised to speak or not speak. *See United States v. Miller*, 48 F. App'x 933, 946 (6th Cir. 2002) (finding that the

14

government did not breach its promise "not to oppose" acceptance credit by "standing mute on the issue of acceptance of responsibility"). "[W]hile the government must be held to the promises it made, it will not be bound to those it did not make." *United States v. Schuhe*, 688 F. App'x 337, 339 (6th Cir. 2017) (per curiam) (citation omitted). A promise not to oppose something is a promise about the *content* of the government's speech, if any.

Not once did the government advocate "against" or "opposite [to]" the acceptance credit. Instead, the prosecutor *explained* to the court *the grounds* it could use to *either* reject the credit or apply it. It explained to the district court that the district court *could not* refuse the acceptance credit just because Rodriguez's attorney argued against leadership enhancement under Section 3B1.1(a). In the government's view, it explained, the only basis on which the court could refuse acceptance credit was Rodriguez's own statements—the truck-buying story.

Rodriguez characterizes the government's statements as a "direct objection to the reduction" because the attorney described Rodriguez's statements as "nonsense." (Appellant's Br. at 24 (citation omitted).) He explains that the government's comments on his statements "certainly had an effect on the judge's determinations, and there is no question that those comments were designed to influence the judge. Commentary designed to influence the judge to deny a reduction for acceptance of responsibility is inconsistent with a promise not to object to the motion." (*Id.* at 25.)

Rodriguez, however, cherry-picks parts of the government's statements to buttress his arguments. While the government did characterize the truck-buying story as "nonsense," it also supplied the court with an alternate theory under which the court *could* give Rodriguez acceptance credit. It explained that the court could grant acceptance credit if it factored in Rodriguez's guilty

plea and if it found the truck-driving story not so far "across the line to lose acceptance." (*Id.* at 24.) The government did not plainly err and did not breach the plea agreement.

Rodriguez also cites four cases to support his position. None do. Rodriguez first cites *United States v. Taylor*, 77 F.3d 368 (11th Cir. 1996) and *United States v. Canada*, 960 F.2d 263 (1st Cir. 1992). In both those cases, defendants argued that the government breached its plea agreement with them. The similarities between those cases and Rodriguez's situation begin and end there. In *Taylor*, the Eleventh Circuit found the prosecutor breached the plea agreement when it "affirmatively supported a position inconsistent with the plea agreement." 77 F.3d at 371. The government promised to recommend a sentence of less than ten years. And it did that, *at sentencing*. But in its response to Taylor's objections to the presentence investigation report, the government "advocated" for the report's recommendation—a minimum sentence almost double the government's promise. *Id.* The court found that the government's position urging for the report's recommendation conflicted with its promise in the plea agreement. *Id.*

In *Canada*, the government unambiguously failed to complete the plea agreement's requirement. The government "*agree*[*d*] *to recommend* that the Court impose a sentence of thirty-six (36) months incarceration." *Canada*, 960 F.2d at 268 (first two emphases added) (quoting the plea agreement). At sentencing, the prosecutor did inform the court of the government's promise but "she never herself affirmatively recommended" that sentence. *Id.* She only "paid 'lip service' to the negotiated agreement." *Id.* at 269. That fell short of the plea agreement's promise. That court consequently also found that the government's conduct breached its plea agreement.

Rodriguez raises both *Santobello v. New York*, 404 U.S. 257 (1971) and *United States v. Askew*, 173 F.3d 856 (1999) (per curiam) next to support his breach argument. Those cases are inapposite as well. In both, the government promised one thing and did the complete opposite at

16

sentencing. The *Santobello* Court addressed a situation where the original prosecutor agreed to make no recommendation as to the sentence. But at sentencing, a new prosecutor recommended the maximum sentence. Of course, the Supreme Court recognized that the government breached its plea agreement there. *Santobello*, 404 U.S. at 262. Similarly, in *Askew* the government promised not to oppose an acceptance credit but then "argued against the adjustment" for that credit at sentencing. 173 F.3d at *1. There the government even "concede[d] that it breached the plea agreement" and only argued that "the government's breach was harmless error." *Id.* at *2.

Rodriguez also alleges that the government's statements after the district court denied acceptance credit breached the plea agreement. After the district court explained that it would not grant the acceptance credit and before the government's closing argument, the government stated:

> [B]efore I get into the government's allocution proper, there are a couple things I would like to put on the record. First off, I think that at least the first part of the defendant's allocution proves, if there was any doubt, proves the wisdom of the Court's decision on acceptance of responsibility. Because he had the audacity to repeat to Your Honor, in spite of all the evidence you just saw, he had the audacity to repeat the same [truck-buying] story that he told Officer Williams. So I think that pretty much destroys any argument that somehow the Court erred on deciding not to award acceptance of responsibility.

(R. 144, Tr. 11/21/18, PageID 897.)

We cannot find that the government committed plain error in its closing statements for two reasons: (1) the government did not "oppose" Rodriguez receiving acceptance credit in those statements and (2) even if the government did "oppose" that credit, it had reserved the right to do so under those circumstances.

When the government made those statements, the district court had explained that it would not apply the acceptance credit to Rodriguez's sentence. It based its decision on its factual finding that Rodriguez continued to lie even after he pleaded guilty. (*Id.* at 890.) The government need not have persuaded the court to make a decision it already made. And the prosecution did not do

17

so. The government's own words do not "oppose" or work "against" the acceptance credit. Instead, they laud the court's "wisdom" in refusing to apply the acceptance credit and give the government's opinion that the court did not err in its decision.

More importantly, even if the government's closing statements insinuating its position against acceptance credit was enough to "oppose" the credit, the government did not breach its agreement. In the plea agreement, the government "reserve[d] the right to object to Defendant's request [for acceptance credit] if it subsequently learns of conduct by the Defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1." (R. 81, Plea Agrmt., PageID 241.) The government made those statements after it listened to Rodriguez address the district court, double down on his truck-buying story, and minimize his involvement in the scam. (*See* R. 144, Tr. 11/21/18, PageID 895–96 (explaining that he met "these people" by chance and that he only drove them around after they asked).) Only after the government "learn[ed] of conduct" by Rodriguez that the district court itself had just pronounced "inconsistent" with "the Commentary to Section 3E1.1" did the government make those statements. The government, under the plea agreement, was well within its rights to do so.[3]

---

[3] We reached the same conclusion under almost identical facts in *United States v. Cook*, 607 F. App'x 497 (6th Cir. 2015). There are only two differences between the case there and the one before us today. In *Cook*, the government promised it would "recommend" the defendant receive "full reduction for acceptance of responsibility" under Section 3E1.1 rather than promise "not to oppose" the credit. *Id.* at 500 (quoting the plea agreement). Based on its promise there, the government's actions—affirmatively arguing against the acceptance credit—would have breached the plea agreement had the district court not already found the defendant a leader or organizer and had the government not been responding to the defendant's inconsistent testimony at sentencing. *See also United States v. Mendoza*, 199 F. App'x 411, 417 (6th Cir. 2006); *United States v. Scott*, 188 F.3d 510 (6th Cir. 1999).

**III.**

For the foregoing reasons, we AFFIRM the district court's decision to impose a four-level enhancement to Rodriguez's sentence under U.S.S.G. Section 3B1.1(a) and to refuse to apply the two-level acceptance reduction under U.S.S.G. Section 3E1.1(a).